[No. 40590.    En Banc.    February 26, 1970.]

*In the Matter of the Application for a Writ of Habeas Corpus of* GENEVIEVE FAYE BRUMLEY, *Appellant*, v. CHARLES R. DENNEY JUVENILE CENTER OF SNOHOMISH COUNTY, *Respondent.**

*Robert G. Perlman* and *Samuel P. Hale,* for appellant.

*The Attorney General, Paul J. Murphy, Assistant, Robert E. Schillberg,* and *Faye Collier,* for respondent.

HAMILTON, J.—This is an appeal from a denial by the superior court of a petition for a writ of habeas corpus. The petition was filed on behalf of appellant, a minor, under

*Reported in 466 P.2d 481.

commitment to the Department of Institutions based upon an adjudication of delinquency. At the time of the petition, appellant was being detained in the Snohomish County juvenile facility known as the Charles R. Denney Juvenile Center, located in Everett, Washington.

The appeal is here on a short record. One of the questions presented, relating to the payment of costs and attorney fees on behalf of an indigent appealing a superior court ruling in a habeas corpus proceeding, has been resolved by our decision in *Honore v. State Bd. of Prison Terms & Paroles,* 77 Wn.2d 660, 466 P.2d 485 (1970). The remaining issue concerns itself with whether retroactive effect should be given to the rule enunciated in *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), that indigent juveniles be afforded appointed legal counsel to represent them in delinquency adjudicatory proceedings, absent an appropriate waiver.

The facts are undisputed. They reveal that appellant, now 17 years of age and the product of a broken home, has been a dependent ward of the juvenile court of Snohomish County since January 9, 1962. Her course since that time has been a troubled one and she had been under varied supervision. On December 12, 1966, after admitting she telephoned bomb threats to local schools on two occasions, she was adjudged a delinquent child. Present at the adjudicatory hearing, in addition to court personnel, were her natural parents, her welfare caseworker, a member of the juvenile probation staff, and an officer from the Everett Police Department. Appellant was not represented by an attorney, nor did the procedure then in effect provide for appointment of counsel to represent her at the hearing had she and her parents so wished and been unable to otherwise provide such representation.

Upon being adjudged a delinquent, and no doubt because of her previous history before the juvenile court and the inability of her parents to provide appropriate supervision, appellant was committed to the Department of Institutions and transferred to Echo Glen Children's Center. Her prog-

ress was satisfactory in that facility and she was paroled to Galland Hall, a girls' school, in Spokane, Washington, on February 21, 1968. Thereafter, during the month of June, 1968, appellant ran away from Galland Hall and returned to the Everett area. The juvenile authorities apprehended her and placed her in the juvenile center.

Counsel, retained by appellant's parents at a nominal sum, was granted permission to proceed in forma pauperis, and, on August 7, 1968, petitioned the superior court for a writ of habeas corpus. As grounds for the writ it was alleged that appellant was denied her right to appointed counsel at the delinquency hearing held on December 12, 1966.

At the threshold of our consideration of the question of whether the *Gault* right to counsel rule should be applied retroactively, we are met with appellant's contention that our decision in *In re Lesperance,* 72 Wn.2d 572, 434 P.2d 602 (1967), has answered the question in the affirmative.

In *Lesperance,* without advising her of her right to appointed counsel at the adjudicatory hearing, the juvenile court declared her to be delinquent. The hearing was held on April 14, 1967. She then made a timely application to this court for review by way of a writ of certiorari, which was granted. On May 15, 1967, 1 month after the adjudicatory hearing and while Miss Lesperance's cause was pending in this court, the decision in *Gault* was announced. We then held that the right to counsel rule of *Gault* was applicable, reversed the finding of delinquency and remanded the cause for further proceedings.

Miss Lesperance's proceeding had not been finalized when *Gault* was announced. Rather, it was before this court on direct review at that time. While the statutes dealing with juvenile delinquency and dependency proceedings do not, with one exception not pertinent here, specifically provide for an appeal, appellate review by certiorari is granted as a matter of course if a petition is timely filed. Miss Lesperance and her parents pursued such a course. In the present proceeding, neither appellant nor her parents sought such a review. Appellant's delinquency adjudica-

tion, insofar as direct appellate review be concerned, then, became final before the *Gault* rules were proclaimed. We do not, therefore, regard *Lesperance* as dispositive of the question as to whether the pertinent *Gault* rule is wholly retroactive. *Cf. In re Whittington,* 391 U.S. 341, 20 L. Ed. 2d 625, 88 S. Ct. 1507 (1968), (per curiam); *In re Creek,* 243 A.2d 49 (D.C. App. 1968).

Several other state appellate courts have faced the issue now under consideration or issues closely analogous. The following state courts have held that *Gault* did not retroactively apply to declination or transfer hearings designed to determine whether the juvenile should face charges as an adult, which hearings were held prior to May 15, 1967. *Eyman v. Superior Court,* 9 Ariz. App. 6, 448 P.2d 878 (1969); *In re Harris,* 67 Cal. 2d 876, 64 Cal. Rptr. 319, 434 P.2d 615 (1967); *State v. Steinhauer,* 216 So. 2d 214 (Fla. 1968); *Workman v. Commonwealth,* 429 S.W.2d 374 (Ky. 1968), *(see also Smith v. Commonwealth,* 412 S.W.2d 256 (Ky.), *cert. denied,* 389 U.S. 873, 19 L. Ed. 2d 155, 88 S. Ct. 162 (1967)); *Hammer v. State,* 3 Md. App. 96, 238 A.2d 567 (1968), *(see also State v. Hance,* 2 Md. App. 162, 233 A.2d 326 (1967)); *Cradle v. Peyton,* 208 Va. 243, 156 S.E.2d 874 (1967), *cert. denied,* 392 U.S. 945, 20 L. Ed. 2d 1407, 88 S. Ct. 2296 (1968). One court held *Gault* was retroactively applicable to a transfer hearing. *Summers v. State,* 227 N.E.2d 680, opinion superseded, 230 N.E.2d 320 (Ind. 1967).

Insofar as our research reveals, the following state courts have held *Gault* retrospectively applicable to adjudicatory hearings declaring a juvenile to be a delinquent where the hearings were held prior to May 15, 1967. *Application of Billie,* 103 Ariz. 16, 436 P.2d 130 (1968); *Marsden v. Commonwealth,* 227 N.E.2d 1 (Mass. 1967); *State in re J. M.,* 103 N. J. Super. 88, 246 A.2d 536 (1968); *State ex rel. LaFollette v. Circuit Court,* 37 Wis. 2d 329, 155 N.W.2d 141 (1967). Two courts have held *Gault* was not retroactively applicable under such circumstances. *Sult v. Weber,* 210 So. 2d 739 (Fla. App. 4th Dist. 1968); *Richardson v. State ex*

*rel. Milton,* 219 So. 2d 77 (Fla. App. 3d Dist. 1969). (*See,* however, *State v. Steinhauer, supra.*)

It would serve little purpose to review the opinions cited. Suffice it to say that in several of the opinions little if any express rationale appears. And further, in the absence of a clear mandate one way or the other from the United States Supreme Court, we are obliged to decide the issue ourselves.

As a prelude to our consideration of the issue, we pause to note that implicit in the *Gault* decision, despite the fact that the decision was itself a retroactive one, is recognition of the fact that new procedural rules, foreign to the almost universal concept of juvenile court practices, were being announced. Indeed, to say the least, the doctrine promulgated in *Gault* is substantially more far reaching and revolutionary than the rules announced in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), which the United States Supreme Court held to be prospective in application. *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772 (1966). Furthermore, it is fitting to observe that the concept of assistance of counsel in the technical intricacies of a criminal trial—pointed to in *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)—presents a substantially different complexion when transposed into the traditionally informal atmosphere of a juvenile court proceeding where, for the most part, parents, as well as the court, are more concerned with the correction of an erring child than with engaging in a heated and adversary contest.

■ *Linkletter v. Walker,* 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965), established the principle that new federal constitutional rules of procedure may be limited to prospective application if the situation warrants such treatment. Since that decision, the court has had many occasions to consider the retroactivity problem with respect to various rules. The most extended discussions, in addition to that in *Linkletter,* appear in the following cases: *Desist v. United States,* 394 U.S. 244, 22 L. Ed. 2d 248, 89 S. Ct. 1030

(1969); *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967); *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772 (1966); *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459 (1966).

The doctrine announced in these cases may be summarized in the following fashion: Whether a new constitutional rule is to be limited to prospective application turns on the particular rule and its purposes and effects. Three factors are deemed relevant to a resolution of the question: (1) The purpose of the new rule and whether retroactive application of the rule would effectively serve that purpose; (2) whether and to what extent law enforcement agencies, including courts, justifiably relied upon the preexisting rule; and (3) the effect of retroactive application upon the administration of justice, including the number of jurisdictions whose past procedures did not measure up to the new rule, the probable percentage of those individuals whose former trials would be invalidated by retroactive application of the new rule coupled with the practical difficulties which would be encountered in retrials of such persons, and the availability of remedies to correct the deficiencies aimed at by the new rule other than invalidation of former proceedings. All three factors must be examined, and the process is one of balancing each against the other.

■ With respect to the first factor, there were, no doubt, several reasons why the United States Supreme Court was lead to promulgate the Gault right to counsel rule. They are amply expressed in the decision. However, it would appear that the main objective was to insure, as far as possible, that a delinquency adjudicatory proceeding would constitute a fair and judicious examination of the facts bearing upon the particular issue of delinquency and lead to an accurate and just determination.

*Gault's* right to counsel rule will undoubtedly add to the probability that any future juvenile proceeding will come to a proper result. However, retroactive application of this rule would not measurably effectuate its purpose. First, it

can be safely observed that the vast majority of juvenile proceedings carried out before *Gault* were fair and compassionate, resulted in accurate factual determinations (in most instances it is reasonable to assume that the child's antisocial behavior was conceded), and concluded with appropriate remedial dispositions. And, second, a requirement that juvenile proceedings finalized before *Gault* be invalidated and the juvenile reprocessed, in some instances years after the event, would add little to the social and psychological attitude of the individual involved nor presently contribute in any measurable degree to the philosophy giving rise to the Gault rule.

Tangible evidence concerning the delinquent act involved would, in many cases, have been lost or destroyed. Witnesses' memories would be dimmed if not obliterated. Under such circumstances there is slight chance that a new hearing, even with the assistance of counsel, would result in more accurate findings of fact or more appropriate dispositional orders. This is especially true when it is noted that, at least in this state, the juvenile court, where a retrial is ordered, may not exercise extended jurisdiction over a person 18 years of age or over, even though he was under 18 when first processed by the juvenile court. *In re Lesperance,* 72 Wn.2d 572, 434 P.2d 602 (1967); *Dillenburg v. Maxwell,* 70 Wn.2d 331, 413 P.2d 940, on rehearing, 422 P.2d 783 (1967). If finalized pre-*Gault* juvenile proceedings were to be invalidated by reason of *Gault,* many of the affected individuals would now be over 18 and either would have to be tried as adults or be immune from any correctional process, even though their prior conduct in fact exposed them to remedial action and their present attitude dictated the necessity.

*Gault* was intended to improve the standards of juvenile procedures and improve upon the administration of juvenile justice. It was not intended that by reason of the decision prior determinations would be discarded and the administration of rehabilitative measures terminated as to many juveniles now undergoing treatment.

We, therefore, conclude that even though *Gault's* right to

counsel rule is intended to enhance the reliability and integrity of the fact-finding process in the juvenile court, retroactive application of that rule now would not, on balance, significantly further its basic objectives as to those cases finalized before the decision.

The second relevant factor to the issue of retrospectivity is the reliance placed upon pre-*Gault* procedures by law enforcement, administrative, social, and judicial agencies. In this regard, little can be added to the history and prior procedures of the juvenile court system set forth in the *Gault* decision. It was there recognized that, since the turn of the century, with few exceptions, the public, the courts, parole and probation staffs, social agencies, and law enforcement officials have relied upon pre-*Gault* juvenile delinquency procedures and concepts, including the concept that juveniles were not entitled to counsel at public expense. Not only have these agencies so relied upon pre-*Gault* standards, they have also been fully justified in so doing by the dearth of judicial pronouncements to the contrary. In fact, it is difficult to envision a case wherein the extent of past reliance on a presently discarded rule could be greater or more widespread. We conclude that this fact mitigates heavily against retroactivity of *Gault*.

The third factor to be considered is the effect retroactivity would have upon the administration of justice. With respect to this factor, we believe there is little doubt but that retroactive application of the Gault right to counsel rule would have an effect little short of devastating. There is unanimous agreement among commentators and courts that *Gault* forces a reevaluation of the legal and sociological assumptions which have been the foundation of the present system of separate juvenile courts. There is also agreement that *Gault* requires fundamental changes in juvenile court delinquency proceedings. It is safe to assume that nearly all, if not all, juvenile delinquency proceedings finalized prior to May 15, 1967, violated some or all of the proscriptions of *Gault*. Such is the sweep of that decision.

It is our considered view that to require at this time a voiding and reprocessing of the literally thousands of out-

standing pre-*Gault* delinquency determinations would serve no useful social or public purpose, and would unduly and unwisely burden already overcrowded court calendars. Furthermore, as we have heretofore indicated, in many instances the benefits—and certainly there are some—of treatment through the auspices of the juvenile court system would be irretrievably lost to those who have since turned eighteen.

We reach the conclusion that, on balance, the factors deemed relevant and determinative of the retroactivity or prospectivity of a newly enunciated procedural rule mitigate against retroactivity.

Accordingly, we hold that the right to counsel rule promulgated in *Gault* does not apply to adjudications of delinquency which were finalized prior to May 15, 1967. Insofar as *In re Lesperance,* 72 Wn.2d 572, 434 P.2d 602 (1967), may imply a contrary view, it will be deemed modified and its scope limited to cases falling within its orbit.

The superior court's denial of a writ of habeas corpus is affirmed.

HUNTER, C. J., FINLEY, WEAVER, HALE, NEILL, and McGOVERN, JJ., and ARMSTRONG, J. Pro Tem., concur.