[No. 44682. Department One. May 19, 1977.]

*In the Matter of the Welfare of*
JOHN HAROLD LEWIS.

*McGillin & Guykema* and *Kathryn Guykema,* for petitioner.

*Don Herron, Prosecuting Attorney,* and *Donald Meath, Deputy,* for respondent.

UTTER, J.—Does an indigent minor charged with committing a crime, have the constitutional right to appointed counsel and expenditure of public funds for the purpose of appellate review of an order of the juvenile court declining jurisdiction and transferring his case to the prosecuting attorney for adult prosecution? We hold that he does and direct the entry of an order providing appointed counsel and the expenditure of public funds to facilitate appellate review.

John H. Lewis is a minor who was detained by Pierce County juvenile authorities on charges of burglary and auto

theft. A hearing, at which he was represented by an attorney, was held in the juvenile court and an order was entered transferring the case to the prosecuting attorney for disposition under the adult criminal code. The order. recites the juvenile court had "exhausted its resources" and that transfer to adult status would be in the minor's best interest.

Subsequent to this declination proceeding, Lewis was charged in Pierce County Superior Court and his present counsel was appointed to represent him. Following her appointment, counsel determined that she could best represent Lewis by seeking appellate review of the juvenile court transfer hearing and moved in juvenile court for an order of indigency, asserting a constitutional right to review at public expense. The juvenile court then entered a finding of indigency and transferred the motion for order of indigency and other pertinent pleadings to this court.[1]

█ Equal protection requires the state to provide appointed counsel for appeal and a right of appeal at public expense in those classes of cases in which indigents are entitled to appointed counsel at the trial level and a right of appeal is provided. *Draper v. Washington,* 372 U.S. 487, 9 L. Ed. 2d 899, 83 S. Ct. 774 (1963); *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963). This principle was developed in criminal cases but it applies to other disputes involving matters of such a fundamental nature as to require appointment of counsel at the trial level, such as juvenile delinquency proceedings and proceedings concerning possible permanent deprivation of parental rights. *See In re Lesperance,* 72 Wn.2d 572, 434 P.2d 602 (1967)(modified as to other issues), *Brumley v. Charles R. Denney Juvenile Center,* 77 Wn.2d 702, 466 P.2d 481 (1970); *In re Luscier,* 84 Wn.2d 135, 524 P.2d 906 (1974).

---

[1]Such a procedure is in accord with the language of our court rules with regard to orders of indigency in "civil cases" involving issues other than permanent deprivation of parental rights or determination of delinquency. *See* RAP 15.2(b)(3); RAP 15.2(c).

■ Our court rules pertaining to indigent appeals reflect the basic nature of the right to counsel and appeal at public expense in these cases, requiring issuance of an order of indigency by the superior court upon proper showing of indigency and an allegation that appeal is sought in good faith. *See* RAP 15.2(a); 15.2(b)(2). Where issues of a less fundamental nature are involved, the right to pursue remedies at public expense is considerably more limited. *Housing Authority v. Saylors*, 87 Wn.2d 732, 557 P.2d 321 (1976). In such cases, in addition to establishing indigency and good faith, the moving party has an obligation to allege facts and cite authority demonstrating that the appeal is well taken and a miscarriage of justice has occurred. Upon such a showing the court may exercise its inherent power to waive fees; however, it is not required that the state supply counsel. Our examination of the record before us and pertinent authority leads us to the conclusion juvenile transfer proceedings fall within the former class of cases. Mr. Lewis is therefore entitled to entry of the requested order.

The juvenile court law applies "to all minor children under the age of eighteen years who are delinquent . . ." A delinquent child is defined as

> any child under the age of eighteen years who violates any law of this state, or any ordinance of any town, city, or county of this state defining a crime or who has violated any federal law or law of another state defining a crime, and whose case has been referred to the juvenile court by any jurisdiction whatsoever.

RCW 13.04.010. The differences between a delinquency proceeding and an adult criminal trial are substantial. An adjudication of delinquency is not deemed conviction of a crime. RCW 13.04.240. A child adjudged delinquent is "subject to the custody, care, guardianship and control of the court" (RCW 13.04.010) rather than the criminal sanctions applicable to adult offenders. The juvenile court has available to it a broad range of alternatives designed to facilitate the care and rehabilitation of delinquent children. *See* RCW 13.04.095. Our law precludes commitment of

juveniles beyond the age of 21 years (RCW 13.04.260) and also provides for the selective destruction of files pertaining to juvenile offenders after they have reached the age of majority. RCW 13.04.250; *In re Carlson,* 84 Wn.2d 969, 530 P.2d 331 (1975).

The special protections afforded juvenile offenders under these and other statutes may be lost if the juvenile court exercises its statutorily vested discretion to decline jurisdiction and transfer a case for trial under the adult criminal code. RCW 13.04.120.[2] Recognizing the "critical importance" of such a decision, the Supreme Court has held that a transfer order must be based upon procedures sufficient to satisfy "basic requirements of due process and fairness." *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966). In *Kent* at page 554, the Supreme Court held: "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." Our court has held that the transfer decision is reviewable for the purpose of determining whether the proceedings were cloaked with the procedural protections essential to due process and fairness in this context or to determine if the decision to transfer was so arbitrary as to amount to an abuse of discretion. *See In re Harbert,* 85 Wn.2d 719, 538 P.2d 1212 (1975); *State v. Piche,* 74 Wn.2d 9, 442 P.2d 632 (1968); *Dillenburg v. Maxwell,* 70 Wn.2d 331, 413 P.2d 940, 422 P.2d 783 (1966).

Although there was initially, some confusion as to whether the rights to hearing, counsel, and a statement of reasons enunciated in *Kent* were based upon the court's interpretation of the language of the District of Columbia statute there at issue, or constitutional due process, it is

---

[2]RCW 13.04.120 reads in part: "If, upon investigation, it shall appear that a child has been arrested upon the charge of having committed a crime, the court, in its discretion, may order such child to be turned over to the proper officers for trial under the provisions of the criminal code."

now generally accepted that the rights therein enunciated are of constitutional magnitude.[3]

▮ While this court has not had occasion to directly confront the issue of right to counsel in the context of juvenile transfer proceedings, we have recognized, in accordance with the general view of other courts, the constitutional stature of other aspects of the *Kent* decision. *See Dillenburg v. Maxwell,* 70 Wn.2d 331, 413 P.2d 940, 422 P.2d 783 (1966) (hearing); *State v. Williams,* 75 Wn.2d 604, 453 P.2d 418 (1969), and *In re Harbert,* 85 Wn.2d 719, 538 P.2d 1212 (1975)(statement of reasons). In addition, appointment of counsel is required by our court rules. JuCR 7.2(b). Due process requires effective assistance of counsel at the transfer hearing, a critical stage of proceedings "criminal in nature" *(Tetro v. Tetro,* 86 Wn.2d 252, 253, 544 P.2d 17 (1975)), at which time the "defense" of juvenile status may be lost. *See Hamilton v. Alabama,* 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157 (1961); *Kemplen v. Maryland,* 428 F.2d 169 (4th Cir. 1970).

An order transferring a juvenile for criminal trial as an adult has been recognized by our court to be an action

---

[3]The following year the Supreme Court clarified its holding in *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966), in another landmark decision in the area of juvenile law, stating: "Just as in *Kent* v. *United States . . .* we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration . . ." *In re Gault,* 387 U.S. 1, 36, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967). Consistent with the foregoing language of the Supreme Court, a vast majority of courts addressing the issue have treated the right to counsel and other aspects of due process set forth in *Kent* to be mandated by the federal constitution. *See, e.g., Harris v. Procunier,* 498 F.2d 576 (9th Cir. 1974); *Geboy v. Gray,* 471 F.2d 575 (7th Cir. 1973); *United States ex rel. Turner v. Rundle,* 438 F.2d 839 (3d Cir. 1971); *Kemplen v. Maryland,* 428 F.2d 169 (4th Cir. 1970); *State v. Bills,* 504 S.W.2d 76 (Mo. 1974); *State v. McArdle,* 156 W. Va. 409, 194 S.E.2d 174 (1973); *State v. Martin,* 107 Ariz. 444, 489 P.2d 254 (1971); *In re Harris,* 67 Cal. 2d 876, 434 P.2d 615, 64 Cal. Rptr. 319 (1967). *Cf. State v. Acuna,* 78 N.M. 119, 428 P.2d 658 (1967). *See generally* Comment, *The Juvenile Court Revolution in Washington,* 44 Wash. L. Rev. 421 (1969); Schornhorst, *The Waiver of Juvenile Court Jurisdiction: Kent Revisited,* 43 Ind. L.J. 583 (1968).

which is subject to direct appeal. *In re Harbert, supra; In re Hernandez,* 15 Wn. App. 205, 548 P.2d 340 (1976); *In re Burtts,* 12 Wn. App. 564, 530 P.2d 709 (1975). As a final order extinguishing the "civil" aspects of a juvenile delinquency proceeding, it is subject to appeal as a matter of right under our present court rules. RAP 2.2(a)(3). Moreover, our decisions and commentators have recognized that failure to allow direct appeal of the transfer decision will often frustrate the purposes of the transfer proceedings. Delay in appealing the transfer decision until final disposition of criminal charges often leads to a situation in which, due to passage of time, there is no effective means of reconstructing the circumstances which existed at the time of the transfer decision or, if the defendant by that time has passed the age of majority and is thus no longer subject to juvenile court jurisdiction, no means by which he or she may obtain the benefits of juvenile court jurisdiction even if it is determined that the transfer was wrongful. *See McRae v. State,* 88 Wn.2d 307, 559 P.2d 563 (1977); *State v. Williams,* 75 Wn.2d 604, 453 P.2d 418 (1969); Note, *Review of Improper Juvenile Transfer Hearings,* 60 Va. L. Rev. 818 (1974).

In view of the existence of both a constitutional right to counsel at the transfer hearing itself, and a right to direct appeal of that decision, the conclusion that counsel must be provided for indigents who seek appellate review of such determinations is inescapable. *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963). We conclude that this proceeding is akin to appeal in a criminal case, a delinquency proceeding, or a case involving permanent deprivation of parental rights. Hereafter, motions for order of indigency filed for the purpose of facilitating appellate review of allegedly improper transfer decisions should be treated as included within this class of cases and processed under the procedures set forth in RAP 15.2(b)(2) rather than RAP 15.2(b)(3).

The order of indigency requested is granted.

WRIGHT, C.J., and STAFFORD and DOLLIVER, JJ., concur.

HICKS, J. (dissenting)—I dissent. I am not prepared to open the floodgate of indigent appeals at public expense in adverse juvenile declination rulings. That is precisely what the majority opinion invites. Until required by the United States Supreme Court, I am satisfied that we have gone far enough in requiring that, in indigent cases, an attorney be appointed to represent the juvenile at the declination hearing.