[No. 45175. En Banc. August 10, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. BOB L.
BINFORD, *Appellant.*

*Dale A. McBeth,* for appellant.

*Jeremy R. Randolph, Prosecuting Attorney,* for respondent.

STAFFORD, J.—Bobby Lathen Binford appeals a judgment and sentence entered following his conviction of escape in the second degree. We affirm.

The juvenile department of the Lewis County Superior Court declared appellant a delinquent minor as defined by RCW 13.04.010. The resultant order, entered 21 days *prior* to his 18th birthday provided:

> That the Court does hereby extend jurisdiction of Bobby Lathen Binford beyond his eighteenth (18th) birthday but not beyond his nineteenth (19th) birthday for the following reasons:
>
> (1) extending jurisdiction is necessary for said minor's treatment and rehabilitation;
>
> . . .
>
> (4) that the Green Hill School, Bureau of Juvenile Rehabilitation does have a treatment program to offer said minor, however, such program cannot be adequately implemented or concluded due to the imminence of said minor's eighteenth (18th) birthday.

Appellant was placed at Green Hill School.

On September 30, 1976, appellant became 18 years of age. Twenty–five days later he left Green Hill School without authorization. He was subsequently arrested and charged, as an adult, with escape in the second degree. *See* RCW 9A.76.120(1)(a); RCW 9A.76.010(2).

Prior to trial, appellant moved to dismiss the charge for lack of jurisdiction. He argued that the juvenile court's order extending jurisdiction over him until age 19 required the juvenile court to formally decline jurisdiction, pursuant to RCW 13.04.120, *before* he could be charged or tried as an adult. The trial court denied the motion, found appellant guilty of second–degree escape, and imposed a sentence of 5 years. The Court of Appeals certified the appeal to this court.

Error is assigned to the trial court's failure to dismiss the criminal charge for lack of jurisdiction and to its refusal to remand the matter to the juvenile court for a hearing to determine whether it should decline juvenile jurisdiction.

Appellant raises three issues, all of which concern the effect of the juvenile court's order extending jurisdiction over him until age 19. First, he argues RCW 13.04.260, the statutory authority for the order, vests the juvenile court with initial jurisdiction to consider his alleged crime. Second, he contends that if RCW 13.04.260 only authorizes juvenile courts to make post–majority commitments, his escape was merely a violation of the juvenile court's commitment order and thus must initially be heard by the juvenile court. Finally, he asserts that a juvenile court detention order cannot be used to prove the element of "custody" in the crime of escape. We consider each issue separately.

## I
### THE "EXTENSION STATUTE"—RCW 13.04.260

The authority to extend jurisdiction over appellant until age 19 derives from RCW 13.04.260.[1] Thus, the effect of the extension order upon the jurisdiction of the juvenile court to initially consider appellant's alleged crime turns upon the legislative intent underlying that statute.

---

[1] "RCW 13.04.260 Commitment of delinquent beyond age twenty–one prohibited—Jurisdiction of juvenile court. In no case shall a delinquent juvenile be committed by the juvenile court to the department of social and health services for placement in a juvenile correctional institution beyond the child's twenty–first birthday. A delinquent juvenile shall be under the jurisdiction of the juvenile

Appellant maintains that the statute vests juvenile courts with *additional* initial jurisdiction to consider *all* criminal matters occurring during the extended period. Consequently, it is urged that in appellant's case the juvenile court retained *initial* jurisdiction over all criminal offenses committed by appellant until he attained age 19. Thus, appellant argues, the juvenile court was required to formally decline jurisdiction under RCW 13.04.120 before the Superior Court could assume jurisdiction to consider the criminal charge of escape in the second degree. We do not agree for several reasons.

In 1971 the legislature reduced the age of majority to age 18 for all purposes except as otherwise specifically provided by law. RCW 26.28.010. Thereafter, the power of the juvenile court to commit juveniles beyond the age of 18 was challenged in *In re Carson*, 84 Wn.2d 969, 530 P.2d 331 (1975). We held that RCW 13.04.095[2] did not authorize commitments beyond age 18 because the statute was not a specific exception to RCW 26.28.010. *In re Carson, supra* at 973-74.

---

court or the authority of the department of social and health services beyond the child's eighteenth birthday only if the juvenile court has, prior to the juvenile's eighteenth birthday, found the juvenile to be delinquent and has extended the jurisdiction beyond the child's eighteenth birthday by written order setting forth its reasons therefor.

"In no event shall the juvenile court have authority to extend jurisdiction over any delinquent juvenile beyond the juvenile's twenty-first birthday."

[2] "RCW 13.04.095 Commitment of child—Order of court—Power of department of institutions—Rescinding of commitment. . . . When any child shall be found to be delinquent or dependent, within the meaning of this chapter, the court shall make such order for the care, custody, or commitment of the child as the child's welfare in the interest of the state require. Subject to further order, the court may commit the child:

". . .

"(6) To the department of institutions if the court finds such child to be delinquent, or a dependent child whose dependency arises from incorrigibility as defined by RCW 13.04.010(7).

"In no case shall a child be committed beyond the age of twenty-one years. A child committed to the department of institutions shall be subject to the supervision and control thereof and the department shall have the power to parole such child under such conditions as may be prescribed.

This case presents a different problem. Following Carson's partial invalidation of RCW 13.04.095, the legislature enacted RCW 13.04.260, the "extension statute" at issue here. See *Johnson v. Morris*, 87 Wn.2d 922, 924–25, 557 P.2d 1299 (1976). The new statute permits a juvenile court to extend jurisdiction over a juvenile until age 21. Such "extensions" and post–majority commitments are permissible if the court finds, prior to the juvenile's 18th birthday, that the juvenile is delinquent and enters a written order stating the reasons for the extension. See RCW 13.04.260.

By reenacting a post–majority commitment and jurisdictional extension statute in response to *Carson's* partial invalidation of RCW 13.04.095, the legislature clearly intended to provide juvenile courts with a rehabilitative post–majority dispositional alternative. See *Johnson v. Morris, supra.*

We are not convinced, however, that the legislature intended to go further and give juvenile courts *additional* jurisdiction to hear and determine offenses committed by *adult offenders* who also happened to be "extended delinquents" at the time a new offense was committed. Moreover, our review of the "extension statute" and the other sections of the juvenile court law convinces us that the legislature's use of the term *"jurisdiction"* in RCW 13.04.260 was not intended to vest *additional* initial jurisdiction in the juvenile courts.

RCW 13.04.260 authorizes post–majority disposition on two conditions. First, the juvenile court must set forth, in writing, its reasons for an extension and post–majority commitment. Second, the juvenile court must have found the juvenile to be a *delinquent prior to the juvenile's 18th birthday.* A "delinquent" is defined elsewhere in the juvenile code as one "under the age of eighteen years" who has violated any one of several specified laws. RCW 13.04.010.

---

"The department of institutions shall have the power to discharge such child from custody, and the court shall have the power to rescind the commitment of such child, whenever his or her reformation shall be deemed complete."

Had the legislature intended to vest *additional* initial jurisdiction in the juvenile courts, the term "delinquent" would have been amended to include "extended delinquents." *See, e.g.,* Laws of 1977, 1st Ex. Sess., ch. 291, § 56(10). Further, the "extension statute" requires that a juvenile be found delinquent *prior to* the juvenile's 18th birthday. One cannot be found delinquent unless the offense is committed *before* the juvenile attains the age of 18. RCW 13.04.030.

Finally, RCW 13.04.030 was not amended so as to assign additional "business" to the juvenile courts. *See also Dillenburg v. Maxwell,* 70 Wn.2d 331, 413 P.2d 940 (1966), 422 P.2d 783 (1967). The only "business" assigned to them is found in those cases "coming within the terms" of the chapter concerned with juvenile courts. RCW 13.04.030. By its own terms, the juvenile court law applies only to those "minor children under the age of eighteen years . . ." RCW 13.04.010. Had the legislature intended the "extension statute" to vest *additional* initial jurisdiction in the juvenile courts, the legislature necessarily would have amended *both* the definition of "juvenile," to which the code applies, and the specific statutory assignment of business to the juvenile courts.

Thus, we conclude RCW 13.04.260 does not vest *additional* initial jurisdiction in the juvenile courts. Rather, the legislature intended to provide the juvenile courts with a rehabilitative post–majority disposition alternative for delinquents found to be lacking by *In re Carson, supra.* Consequently, the juvenile court's "extension" of jurisdiction over appellant did not vest it with any additional jurisdiction to consider new criminal acts committed after age 18. Since appellant was charged with committing second–degree escape *after* his 18th birthday this charge could not have been heard originally by the juvenile court and a formal juvenile court declination hearing required by RCW 13.04.120 and *Dillenburg* was not required prior to appellant's trial in superior court.

## II
### ESCAPE IN THE SECOND DEGREE IS A SEPARATE CRIMINAL OFFENSE

Appellant also contends his "escape" was not a crime. He contends it was the mere violation of a juvenile court order. Thus, he argues, his "escape" initially should have been considered by the juvenile court under that court's power to modify its own orders. *See* RCW 13.04.150. We disagree.

Appellant was charged with escape in the second degree. RCW 9A.76.120. Insofar as relevant here, the crime was committed when he escaped from a *"detention* facility." (Italics ours.) RCW 9A.76.120(1)(a). RCW 9A.76.010(2) defines a "detention facility" to include:

> any place used for the confinement, of a person . . . (b) charged with being or *adjudicated to be a* dependent or *delinquent child as defined in RCW 13.04.010* as now or hereafter amended . . .

(Italics ours.)

■ By defining the crime to include an escape from a juvenile detention facility, the legislature clearly considered a delinquent's escape *from* confinement *to* be a criminal offense wholly separate from other considerations that might arise from a mere violation of a juvenile court order. Here, appellant was charged with committing a separate criminal offense while *over* the age of 18. Since his alleged offense occurred *after* age 18, the juvenile court law does not assign consideration of this matter to the juvenile court. *See* RCW 13.04.030. Under the circumstances before us, appellant could only have been tried for this offense in the superior court.

## III
### DETENTION ORDER MAY BE USED TO PROVE ELEMENT OF CUSTODY

Finally, appellant maintains that the detention order cannot be used to prove the element of "custody" in the crime of escape. The argument is without merit.

 The legislature has implicitly authorized the use of the detention order by defining the crime as an escape "from a *detention* facility" as a place for confinement of a person "adjudicated to be a . . . delinquent child as defined in RCW 13.04.010." RCW 9A.76.120(1)(a); RCW 9A.76-.010(2)(b). The legislature may specify directly that evidence which may be received in a criminal action. *See State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977). It may also specify what evidence may be received by implication, as has occurred here. Only if the legislative determination violates a constitutional guaranty will it be invalidated. *See State v. Ruzicka, supra.*

 Appellant neither suggests, nor do we find any constitutional infirmity in permitting the use of a detention order to establish the element of "custody" in the crime of second–degree escape. Rather, appellant relies upon *State v. Matthews,* 6 Wn. App. 201, 492 P.2d 1076 (1971), *review denied,* 80 Wn.2d 1006 (1972), for the proposition that a juvenile court order cannot be used to prove an element of the crime. *State v. Matthews, supra,* is not in point, however. Delinquency adjudications cannot be used to *impeach* adult offenders because such adjudications are not "convictions." RCW 13.04.240. But, contrary to appellant's suggestion, we have *not* held that *all* use of such adjudications is prohibited in adult proceedings. For example, in *State v. Briscoe,* 78 Wn.2d 338, 474 P.2d 267 (1970), we permitted the defendant's character witness to be examined respecting knowledge of the defendant's delinquency. In *State v. Kramer,* 72 Wn.2d 904, 435 P.2d 970 (1967), *cert. denied,* 393 U.S. 833 (1968), we allowed a juvenile's voluntary admission to be used to impeach him in a subsequent adult proceeding although we acknowledged it could not be used in the state's case–in–chief.

Accordingly, we hold (1) RCW 13.04.260 permits post–majority dispositions and does not vest *additional* jurisdiction in the juvenile courts; (2) the crime of escape in the second degree must be originally heard in the superior court if committed by one who has reached the age of 18;

and (3) a juvenile court detention order may be used to prove the element of "custody" in the crime of second-degree escape.

We affirm.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.