[No. 47928–3. En Banc. January 15, 1982.]

*In the Matter of the Personal Restraint of*
RALPH SMILEY, JR., *Petitioner.*

*McCarthy, Holum, Golob & Causseaux,* by *Terrence F. McCarthy,* for petitioner.

*Kenneth O. Eikenberry, Attorney General, David R. Minikel, Assistant, Don Herron, Prosecuting Attorney,* and *Mack E. Call* and *Lloyd P. Fetterly, Deputies,* for respondent.

[As amended by order of the Supreme Court April 1, 1982.]

UTTER, J.—Petitioner Ralph Smiley has brought a personal restraint petition for his release from a juvenile detention facility. He claims the State lacks jurisdiction to replace him in a juvenile facility to complete his earlier juvenile sentence imposed prior to a declination of jurisdiction over him for an offense committed while on escape from the Maple Lane School. For this crime he was convicted in adult court and has since completed his sentence in the county jail.

Petitioner Smiley was convicted in juvenile court on four counts of burglary in the second degree and was given an

aggregate sentence of 114 to 156 weeks on April 10, 1979. Jurisdiction was extended under RCW 13.40.300 to age 20 years. Smiley was immediately committed to the Maple Lane School, from which he escaped on July 6, 1980. At the time of his escape, Smiley was still serving time for a prior conviction for burglary in the second degree, pursuant to a judgment and sentence of Pierce County Juvenile Court dated December 1, 1978.

After approximately 6 days at large, Smiley was apprehended on July 12, 1980, and arraigned on July 15, 1980, for committing burglary in the second degree while on escape from Maple Lane School. On July 30, 1980, the juvenile court issued an order declining jurisdiction of juvenile court for charges of escape in the second degree and burglary in the second degree. On that same day Smiley was transferred to the Pierce County Jail. On September 23, 1980, he entered a guilty plea to a reduced charge of attempted theft in the second degree and was sentenced with credit given for time served, to 1 year in the Pierce County Jail.

The Division of Juvenile Rehabilitation recommenced the running of Smiley's time for his sentence of December 1, 1978, upon his return to custody after escape. This sentence was completed on August 10, 1980, at which time his sentence pursuant to the April 10, 1979, disposition order commenced and ran concurrent to the sentence Smiley received in adult court on September 23, 1980.

Smiley was released from Pierce County Jail on March 19, 1981, although a juvenile detainer had been lodged against him. As a result of discussions with juvenile authorities, Smiley returned to Maple Lane School on April 3, 1981, 1 day before his 18th birthday. Smiley seeks release from his continuing confinement at that school through this personal restraint petition.

## A
### Purposes of the Act

■ The Juvenile Justice Act of 1977, RCW 13.40, abandoned the doctrine of parens patriae as the single guiding principle of juvenile justice and replaced it with twin principles of rehabilitation and punishment. While the act seeks to "[p]rovide necessary treatment, supervision, and custody for juvenile offenders", RCW 13.40.010(2)(f), it also seeks to "[m]ake the juvenile offender accountable for his or her criminal behavior", RCW 13.40.010(2)(c), and provide for "punishment commensurate with the age, crime, and criminal history of the juvenile offender". RCW 13.40-.010(2)(d). *See generally* Comment, *Waiver of Juvenile Court Jurisdiction Under the Juvenile Justice Act of 1977*, 14 Gonz. L. Rev. 369, 376 (1978).

## B
### The Extended Jurisdiction Statute

The extended jurisdiction provision of the act, RCW 13.40.300, was enacted in response to *In re Carson,* 84 Wn.2d 969, 530 P.2d 331 (1975), which held that since state law (RCW 26.28.010) established the age of majority at 18, juvenile courts cease to have jurisdiction over an individual once he or she reaches that age.

The extended jurisdiction statute provides that commitment within the juvenile system may not extend beyond the juvenile offender's 21st birthday, but permits the juvenile court to extend jurisdiction over the individual past the juvenile offender's 18th birthday if prior to the juvenile's 18th birthday:

> (a) The juvenile court has committed the juvenile offender to the department of social and health services for a sentence consisting of the standard range of disposition for the offense and the sentence includes a period beyond the juvenile offender's eighteenth birthday . . .

RCW 13.40.300(1)(a).

■ In discussing the rationale for the extended jurisdiction provision of the act, we stated in *State v. Binford,* 90

Wn.2d 370, 374, 582 P.2d 863 (1978), "the legislature clearly intended to provide juvenile courts with a rehabilitative post–majority dispositional alternative." Consistent with the act's purposes, this provision serves the purpose of making the offender accountable past the age of majority for his or her juvenile offenses.

The extended jurisdiction statute does not indicate whether extended jurisdiction of the juvenile court over juvenile sentences is nullified when a juvenile court declines jurisdiction over a person under 18 years of age pursuant to RCW 13.40.110. Both parties seek guidance from *State v. Binford, supra,* but *Binford* does not specifically address the issue presented here. In *Binford,* we held that extended jurisdiction does not confer juvenile courts with *additional* initial jurisdiction for offenses that occur during the post-majority period of extended jurisdiction. We did not reach the question of whether juvenile courts could retain jurisdiction with respect to juvenile sentences existing at the time of the postmajority offense.

## C
### THE DECLINATION STATUTE

Smiley, of course, did not commit a postmajority offense. The juvenile court issued a declination order surrendering Smiley to the adult court for trial of an offense that occurred prior to Smiley's 18th birthday. Since *State v. Binford, supra,* did not involve a declination order pursuant to RCW 13.40.110, Smiley argues that when a declination order has occurred the terms of the juvenile justice act preclude the kind of "concurrent jurisdiction" which is necessary between the juvenile and adult systems with respect to postmajority offenses. He argues that RCW 13.04.030, which states that juvenile courts have exclusive original jurisdiction over juveniles alleged or found to have committed offenses within the act unless "[t]he juvenile court transfers jurisdiction of a particular juvenile to adult criminal court pursuant to RCW 13.40.110" (RCW 13.04.030-(6)(a)), means that the juvenile system no longer has any

jurisdiction over a person once jurisdiction is declined. That language leaves open two possibilities, however. The first is that after a declination order the juvenile court surrenders complete jurisdiction. The second is that after a declination order the juvenile court surrenders original jurisdiction as to the declination offense and all future offenses but maintains jurisdiction over past juvenile sentences for which there is no need of original jurisdiction.

Because of the dual purposes of the Juvenile Justice Act of 1977, concurrent jurisdiction after declination has occurred is theoretically possible. A juvenile court may conclude that an offender is no longer amenable to rehabilitation while at the same time it may conclude that the individual is still accountable for punishment previously meted out. The declination statute itself, RCW 13.40.110, does not expressly contemplate the complete surrender of juvenile court jurisdiction. It refers only to "the case transferred", RCW 13.40.110(2), and is apparently designed for declination of jurisdiction only with respect to specific criminal prosecutions.[1]

 Smiley raises two arguments against the possibility of concurrent jurisdiction of the juvenile and adult systems after a declination order by the juvenile court. He first argues that since he is now an adult he may not be incarcerated with children at the Maple Lane School and cites RCW 13.04.115, which states in part:

---

[1]RCW 13.40.020(10) defines "juvenile" as "any individual who is under the chronological age of eighteen years and who has not been previously transferred to adult court". The definition seems to imply that once transferred to adult court an individual may not be considered a juvenile for any purpose. The above definition also excludes as a "juvenile" anyone over 18 years of age, though, and the extended jurisdiction statute permits the juvenile system to maintain jurisdiction over such nonjuveniles. Respondents merely seek to maintain jurisdiction over Smiley—who is also a nonjuvenile—based on the same provision. Although individuals who are over 18 years of age or who have been subject to a declination order are not within the definition of a "juvenile," they remain "juvenile offenders" (RCW 13.40.020(11)) if a juvenile court has found that they committed an offense while a juvenile. Such juvenile offenders are accountable for their juvenile offenses, even if they are no longer juveniles under the statutory definition.

> When any child shall be sentenced to confinement in any institution to which adult convicts are sentenced, it shall be unlawful to confine such child in the same building with such adult convicts, or to bring such child into any yard or building in which such adult convicts may be present.

There are a number of difficulties with this argument. The statute's apparent focus is on preventing children from being kept in adult facilities. Further, Smiley is probably not an "adult convict" as contemplated by the statute. The statutory term refers to adults who are serving time for adult crimes. While Smiley is an adult, he is still a juvenile offender serving a juvenile sentence. Although he is an adult serving a juvenile sentence, many others are similarly situated through operation of the extended jurisdiction statute.[2] *See* RCW 13.40.300; RCW 26.28.010. Finally, by embracing Smiley's interpretation of RCW 13.04.115, we would permit juvenile offenders to escape punishment for juvenile offenses by committing adult crimes—certainly an unacceptable result.

■ Smiley also argues that since RCW 9.92.080 (dealing with adult sentences) and RCW 13.40.180 (dealing with juvenile sentences) both require consecutive sentencing for separate offenses, the Department of Juvenile Rehabilitation cannot run Smiley's juvenile sentence concurrent to his adult sentence. Each statute deals only with sentences within the system to which the statute applies. Neither provision addresses the question of concurrency of sentences for two offenses, one which is juvenile and the other which is adult. Respondent DSHS's decision to run Smiley's sentence concurrent to his adult incarceration is not in violation of either statutory provision that Smiley cites. Moreover, assuming the validity of his argument, juvenile courts could still maintain concurrent jurisdiction over him even if concurrent sentences were not permitted. The logic of his argument would lead only to imposition of consecu-

---

[2]See discussion, *supra,* at footnote 1.

tive sentences and a longer aggregate sentence for him—a result Smiley surely does not intend.

We conclude a juvenile court may maintain concurrent jurisdiction regarding sentences for past juvenile offenses both after the individual has committed a postmajority offense and after a juvenile court declination order.

## D
### The Nature of the Declination Order
#### in this Case

The terms of the declination order are very broad. Although the findings of fact refer to the seriousness of *the alleged offense,* they also state:

> The sophistication and maturity of the juvenile by consideration of the investigation as shown of his home, environmental situation, emotional attitude and pattern of living is such he should be treated as an adult.
>
> The previous record and history of the above minor including previous contacts with law enforcement agencies, Juvenile Court and other jurisdictions indicate no beneficial resources available to said minor through the Juvenile Department of this Court.
>
> A prior period of probation has been previously afforded and a prior commitment to a juvenile institution has been made.

The juvenile court thus took account of Smiley's entire juvenile record and history, which included the outstanding sentence now at issue. One of the rationales for declination of juvenile jurisdiction is to punish the juvenile by making him or her subject to the more severe sanctions of the adult criminal justice system. *See In re Lewis,* 88 Wn.2d 556, 560, 564 P.2d 328 (1977); Gasper & Katkin, *A Rationale for Abolition of the Juvenile Court's Power To Waive Jurisdiction,* 7 Pepperdine L. Rev. 937, 940 (1980). Even though this rationale may be unfounded,[3] Smiley argues that since his entire record was considered in deciding to subject him

---

[3]Respondent State of Washington (Brief of Respondent, at 8) and Gasper and Katkin, *supra,* suggest that offenders for whom jurisdiction is declined by the juvenile court often receive light sentences in adult court.

to adult court jurisdiction, that entire record was subsumed in the declination order of the juvenile court.[4] This argument would have force if it were not for the act's twin purposes of rehabilitation and punishment. While the juvenile court clearly felt Smiley no longer deserved the beneficial resources of the juvenile system, the measure of punishment he received in the juvenile system is still valid.

The declination statute contemplates surrender by the juvenile court only of the single prosecution before it and all future offenses. The juvenile court might well have assumed (consistent with the act's purpose) that Smiley remained accountable for past juvenile offenses but no longer deserved the favorable rehabilitative treatment rendered by the juvenile system.

## E
### PROVIDING A CLEAR POLICY REGARDING JURISDICTION

One of the purposes of the Juvenile Justice Act of 1977 that is mentioned by neither party is to:

> Provide for a clear policy to determine what types of offenders shall receive punishment, treatment, or both, and to determine the jurisdictional limitations of the courts, institutions, and community services.

RCW 13.40.010(2)(j). This aspect of the act's purposes seems least served by both parties' versions of the case. Smiley's position that his juvenile sentence was nullified by the declination order is a conclusion the juvenile court most likely did not consider in declining jurisdiction on Smiley's subsequent offense. While the terms of the declination order are broad, the juvenile court showed no consciousness

---

[4]A California Court of Appeal has stated:

"When a juvenile court determines that a minor is not a fit subject for handling under the juvenile court law, it should not attempt to exercise or retain jurisdiction over the juvenile on matters then pending in the juvenile court, especially where the pending matters were part of the basis upon which the determination of unfitness was made." *In re Dennis J.*, 72 Cal. App. 3d 755, 762, 140 Cal. Rptr. 463 (1977). The purpose of California's juvenile justice act is solely rehabilitative. Under such a system, the logic of the court's discussion in *In re Dennis J.* is compelling.

of such a gamble. We conclude here that concurrent juris-
diction existed in this case. The juvenile court was not
forced to gamble away Smiley's prior juvenile sentences
when issuing its declination order.

At the same time, respondent's argument that Smiley's
juvenile status remains intact after the declination order is
not without its own unfairness. The broad language of the
declination order was clearly misleading and left the adult
superior court ignorant of the concurrency of the juvenile
sentence. As Smiley points out in his reply brief at page 10,
both the prosecution and the judge in the adult proceedings
seemed oblivious to Smiley's outstanding juvenile sentence.
To inform the adult court's disposition of its case and pro-
vide for consistency with the terms of concurrent juvenile
sentences, juvenile courts should state the concurrency of
juvenile sentences in their declination orders.

Petitioner's personal restraint petition is denied. Consis-
tent with the purposes of the Juvenile Justice Act of 1977,
RCW 13.40, Smiley remains accountable for past juvenile
offenses after a juvenile court has declined jurisdiction with
respect to a subsequent offense. Prospectively, juvenile
courts should state in their declination orders the existence
of valid concurrent juvenile sentences to provide for an
informed disposition of the adult offense and harmony
between the two systems of justice.

BRACHTENBACH, C.J., and STAFFORD, DOLLIVER, HICKS,
WILLIAMS, and DIMMICK, JJ., concur.

DORE, J. (dissenting)—The majority opinion accurately
identifies rehabilitation and punishment as the twin goals
of the Juvenile Justice Act of 1977, RCW 13.40. The
majority result, however, jeopardizes the rehabilitation of
many juveniles in the name of punishing a few adults. For
this reason, and those set out below, I dissent.

The majority interpretation of the statute allows an adult
who has served "hard time" to be institutionalized with
juveniles. This result cannot be reconciled with RCW

13.04.115 which provides:

> No court or magistrate shall commit a child under six-teen years of age to a jail, common lock–up, or police station; but if such child is unable to give bail, it may be committed to the care of the sheriff, police officer, or probation officer, who shall keep such child in some suit-able place or house or school of detention provided by the city or county, outside the inclosure of any jail or police station, or in the care of any association willing to receive it and having as one of its objects the care of delinquent, dependent or neglected children. *When any child shall be sentenced to confinement in any institu-tion to which adult convicts are sentenced, it shall be unlawful to confine such child in the same building with such adult convicts, or to bring such child into any yard or building in which such adult convicts may be present.*

(Italics mine.) *See also State ex rel. Sowders v. Superior Court*, 105 Wash. 684, 179 P. 79 (1919).

RCW 13.04.115 represents a clear statutory recognition of the fact that comingling adult criminals with juveniles has a negative impact on the rehabilitation process. Comingling exposes the juveniles to the older convicts' disrespect for the law and greater knowledge of methods for avoiding detection of criminal activity. In short, the adult's age and experience presents a criminal role model for the juveniles which can only lead to an acceleration of criminal activity.

The majority dismisses this statute by noting that "Smiley is probably not an 'adult convict' as contemplated by the statute". (Majority opinion, at 956.) This argument is without merit. Smiley has reached the age of majority, has been convicted of an adult crime and has served time in an adult facility for that crime. In every sense of the term, he is now an adult convict. He cannot go back to being a juvenile offender simply by being placed back at the Maple Lane School. Indeed, such a result directly contradicts RCW 13.40.020(10) and (11). These sections define "Juve-nile" as "any individual who is under the chronological age of eighteen years *and* who has not been previously trans-ferred to adult court;" and "Juvenile offender" as "any

*juvenile* who has been found by the juvenile court to have committed an offense, including a person eighteen years of age or older over whom jurisdiction has been extended . . ." (Italics mine.)

Although the second portion of RCW 13.40.020(11) does allow an adult to be considered a juvenile offender, it does not permit that definition to apply to one who, like Smiley, has been transferred to adult court.

The majority also attempts to avoid the plain language of this statute by arguing that this interpretation would encourage juveniles to commit adult crimes to avoid punishment for those committed as a juvenile. (Majority opinion, at 956.) This argument ignores reality. The conditions in adult facilities are such that juveniles attempt to avoid being transferred to them at all costs. In fact, Smiley himself vigorously objected to the initial transfer.

Finally, the majority's concept of concurrent jurisdiction between the juvenile court and the adult court cannot be reconciled with the statute. The only reasonable interpretation of this statute is that juvenile courts have jurisdiction over juveniles only until they transfer that jurisdiction to an adult court. This interpretation is supported by the definition of "juvenile" and "juvenile offender" (see discussion above) and by RCW 13.40.300(3). That section provides that "[n]otwithstanding any extension of jurisdiction over a person . . . the juvenile court has no jurisdiction over any offenses alleged to have been committed by a person eighteen years of age or older". This section and others have led commentators to conclude:

> Once [jurisdiction is] declined, the offender is thereafter treated as an adult as to all future offenses. Therefore it is a misnomer to continue to label the juvenile as such for juvenile offense purposes, regardless of his age, because *the law of Washington no longer recognizes him as being a member of that class.*

(Footnote omitted. Italics mine.) Patrick & Jensen, *Changes in Rights and Procedures in Juvenile Offense Proceedings,* 14 Gonz. L. Rev. 313, 322 (1979).

Smiley is no longer a juvenile. I would grant his personal restraint petition. For this reason, I dissent.

ROSELLINI, J., concurs with DORE, J.

Reconsideration denied April 26, 1982.