[No. 45539.   En Banc.   May 29, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS J.
BARTON, JR., *Petitioner.*

*Edward B. Critchlow, Richard M. Knoeber,* and *Critchlow, Williams, Ryals & Schuster,* for petitioner.

*Curtis Ludwig, Prosecuting Attorney,* for respondent.

BRACHTENBACH, J.—Defendant was charged with second–degree murder as a result of a shooting which followed an altercation between the occupants of two motor vehicles. After trial on the charge, the jury was unable to reach a verdict and a mistrial was declared. A new trial was scheduled by the Superior Court administrator for February 7, 1977, 94 days after the date of the mistrial. On February 4, 1977, defendant filed a motion to dismiss the charge with prejudice since more than 90 days had elapsed. The motion was denied.

Discretionary review was granted by the Court of Appeals which, by a split decision, upheld the trial court. *State v. Barton,* 17 Wn. App. 846, 565 P.2d 830 (1977). Judge McInturff, in his dissenting opinion (17 Wn. App. at 849), stated the 90–day time limitation of CrR 3.3(b) applied to a retrial following a mistrial. Defendant then petitioned this court for review. While this petition was pending, we released our decision in *State v. Aleshire,* 89 Wn.2d 67, 568 P.2d 799 (1977). Subsequently, we granted the petition for review and remanded this case by notation order to the Court of Appeals "with directions to reconsider". The Court of Appeals reconsidered, and by another split decision again upheld the trial court, holding that, since *Aleshire* had been decided after the trial proceedings, it should not govern. *State v. Barton,* 19 Wn. App. 322, 575 P.2d 730 (1978). Upon reconsideration, the majority found our decision in *Aleshire* to be a "newly adopted *procedural* rule" and stated, referring to CrR 1.3(a), that it should not be applied to "[a]ny acts done before . . . [*Aleshire* was decided] in any proceeding pending under rules of procedure in effect prior to . . . [the decision in *Aleshire*]." *Barton,* 19 Wn. App. at 325.

We affirm the majority of Division Three of the Court of Appeals and deny the motion to dismiss.

The defendant presents no constitutional challenge to his second–degree murder conviction. Rather he complains of a 4–day violation of our voluntarily adopted time limits for a speedy trial as set out in CrR 3.3.

The question is whether the *Aleshire* case, *supra,* was a newly adopted procedural rule or whether it was an interpretation of the application of CrR 3.3 to retrials following a mistrial, not retrospective in nature. It is argued that the *Aleshire* rule should have been anticipated by the fact that we have examined previously the American Bar Association standards where a hiatus appears in CrR 3.3. *State v. Elizondo,* 85 Wn.2d 935, 540 P.2d 1370 (1975).

It is true that in *State v. Elizondo, supra,* we did look to the ABA standards for guidance in filling gaps inadvertently existing under CrR 3.3.

However, neither in *Aleshire* nor in *Elizondo* did we indicate, dictate or mandate that the ABA standards were the absolute and binding source of all solutions and answers to unstated issues of CrR 3.3. As Justice Rosellini said in dissenting in *State v. Parmele,* 87 Wn.2d 139, 143–45, 550 P.2d 536 (1976):

> The majority assumes that the comments to the ABA Standards Relating to Speedy Trial have been incorporated in our rules. If so, it has been done *sub silentio,* and I do not believe that either lawyers or laymen should be expected to read into the rules qualifications or modifications which this court did not see fit to promulgate.
>
> After all, we wrote the rules. We put there what we felt should be included, and presumably we omitted what we felt should be omitted. . . .
>
> . . .
>
> . . . If it [the court] thinks they are inadequate or inappropriate, it should rewrite them. But it ought not to read into them provisions which are not there and read out of them the words that are written. They are complicated enough as they are. To further obscure them is to bring into focus the question whether the court itself, in

its rule making operations, is not bordering on the denial of due process of law.

■ CrR 3.3 was not promulgated without substantial study and controversy. Its purpose remains desirable and attainable. Like all rules it cannot and did not anticipate all of the possible factual situations which arise in the day–to-day trial of cases.

The rule was not all things to all questions. We have amended it several times and other amendments are under consideration. More than 90 appellate decisions have construed or applied CrR 3.3 since it was adopted.

These facts alone should militate against the argument that the *Aleshire* interpretation was merely a proper interpretation of CrR 3.3 to retrials following mistrials when that situation is not even mentioned in the original rule.

We agree with the concurring opinion of Chief Justice Utter who advances forceful arguments as to why the retroactive application of the *Aleshire* principle would not effectively serve the purpose of the rule.

Therefore, we affirm the majority opinion of the Court of Appeals and deny the motion to dismiss.

STAFFORD, WRIGHT, HICKS, and WILLIAMS, JJ., concur.

UTTER, C.J. (concurring)—I concur in the result for I find that under traditional standards of retroactivity, the decision in *State v. Aleshire*, 89 Wn.2d 67, 568 P.2d 799 (1977), cannot be applied to the present case, which was tried before the announcement of the *Aleshire* decision.

In *Aleshire*, we held for the first time that the speedy trial requirements of CrR 3.3 apply to retrials following a mistrial. Although the *ABA Standards Relating to Speedy Trial* provided some foreshadowing of this principle, the principle did not become a part of our law until it was adopted in *Aleshire*.

Under the retroactivity standards applied in prior cases, the question of whether a new rule is to be limited to prospective application turns on

the particular rule and its purposes and effects. Three factors are deemed relevant to a resolution of the question: (1) The purpose of the new rule and whether retroactive application of the rule would effectively serve that purpose; (2) whether and to what extent law enforcement agencies, including courts, justifiably relied upon the preexisting rule; and (3) the effect of retroactive application upon the administration of justice, including the number of jurisdictions whose past procedures did not measure up to the new rule, the probable percentage of those individuals whose former trials would be invalidated by retroactive application of the new rule coupled with the practical difficulties which would be encountered in retrials of such persons, and the availability of remedies to correct the deficiencies aimed at by the new rule other than invalidation of former proceedings. All three factors must be examined, and the process is one of balancing each against the other.

*Brumley v. Charles R. Denney Juvenile Center*, 77 Wn.2d 702, 707, 466 P.2d 481 (1970). These standards have been employed to determine the retroactivity of new constitutional principles (*see, e.g., Brumley*), as well as retroactivity of new interpretations of court rules. *See, e.g., Wood v. Morris*, 87 Wn.2d 501, 514–15, 554 P.2d 1032 (1976); *see also Halliday v. United States*, 394 U.S. 831, 832, 23 L. Ed. 2d 16, 89 S. Ct. 1498 (1969).

Applying the first of these tests to the present case, it is evident that the retroactive application of the *Aleshire* principle would not effectively serve the purpose of the rule. The underlying policy objectives of speedy trial guaranties are to "prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120, 15 L. Ed. 2d 627, 86 S. Ct. 773 (1966). The speedy trial rule accomplishes these objectives by requiring dismissal of the charges for violation of the speedy trial deadlines (*see* CrR 3.3(i)), and thereby establishes a deterrent to violation of these deadlines. Accordingly, the underlying purpose of the

*Aleshire* rule, like other speedy trial requirements, is to deter violations of speedy trial deadlines by threatening the sanction of dismissal of the charges. It has been recognized in other contexts that when a procedural requirement is adopted for the purpose of deterring governmental misconduct, this purpose will not be furthered by applying the requirement retroactively to misconduct which occurred prior to announcement of the rule. *See, e.g., Linkletter v. Walker,* 381 U.S. 618, 636–37, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965) (nonretroactivity of newly announced state exclusionary rule for illegally seized evidence).

The second of the three retroactivity tests provides some support for the position that the *Aleshire* holding should not be limited to prospective application. It was to a certain degree unjustifiable for law enforcement agencies to rely on an assumption that CrR 3.3 did not apply to retrials following mistrial, since the ABA standards called for application of speedy trial requirements in that context and our earlier decisions relied on the ABA standards in interpreting other aspects of CrR 3.3. However, this factor does not call strongly for retroactive application of *Aleshire.* The ABA standards were never declared binding on our construction of CrR 3.3, and we had not given any indication prior to *Aleshire* that we would follow the ABA standards on this point.

The third retroactivity factor does not tip the balance any further in favor of or against retroactive application of *Aleshire.* There are, it may be assumed, a number of cases that would be affected by a finding that *Aleshire* is retroactive. However, the nature of the *Aleshire* rule is such that there would not be so great a number as to call definitively for exclusively prospective application of the rule.

Thus, one of the factors relevant to the retroactivity determination provides definite support for restricting *Aleshire* to prospective application, one factor weighs (although not strongly) in favor of retroactivity, and the

third factor is essentially neutral with respect to this question. I conclude that on balance, it must be found that the *Aleshire* decision is limited to prospective application.

WILLIAMS, J., concurs with UTTER, C.J.

DOLLIVER, J. (dissenting)—The basic premise of the majority is faulty. *State v. Aleshire,* 89 Wn.2d 67, 568 P.2d 799 (1977), did not announce a new rule of procedure. Rather, it was merely a proper interpretation of the application of CrR 3.3 to retrials following a mistrial. *See Seattle v. Crockett,* 87 Wn.2d 253, 255, 551 P.2d 740 (1976). The majority too easily glosses over what this court has done relative to CrR 3.3 and bases its argument on dissents and such irrelevancies as the number of appellate decisions in which we have considered the rule.

It is important to cite those cases and that language which the majority ignores. We have been strict in our application of the speedy trial provisions of CrR 3.3. "[P]ast experience has shown that unless a strict rule is applied, the right to a speedy trial as well as the integrity of the judicial process, cannot be effectively preserved." *State v. Striker,* 87 Wn.2d 870, 877, 557 P.2d 847 (1976).

*Aleshire* was an interpretation which had been foreshadowed by previous cases decided by this court. In 1976, we said, "A majority of this court has twice indicated that the ABA standards should be consulted where a hiatus appears in CrR 3.3." *State v. Striker, supra* at 873. *See also State v. Parmele,* 87 Wn.2d 139, 550 P.2d 536 (1976); *State v. Elizondo,* 85 Wn.2d 935, 540 P.2d 1370 (1975); *Seattle v. Crockett, supra; State v. Bepple,* 14 Wn. App. 491, 542 P.2d 1260 (1975).

In *Striker,* we went on to say:

> While those cases [*State v. Elizondo,* 85 Wn.2d 935, 540 P.2d 1370 (1975); *State v. Parmele,* 87 Wn.2d 139, 550 P.2d 536 (1976)] do not dispose of the question presented here, they point to a source which this court should consult for guidance where a situation arises

which was not contemplated by the rules and not covered by a statute which is in harmony with the rules.

The ABA standards not only indicate that the time for bringing a case to trial should date from the filing of the indictment or information, where it is filed prior to arrest, but they also provide that failure to bring the matter to trial within the time limited should result in absolute discharge. *ABA Standards Relating to Speedy Trial* § 4.1 (Approved Draft, 1968). This latter standard has been expressly adopted by this court (CrR 3.3(b)).

*Striker,* at 874.

We declared in 1975 that "[a] showing of prejudice to the defendant is unnecessary." *State v. Williams,* 85 Wn.2d 29, 32, 530 P.2d 225 (1975). We have not required an accused to demand the right to a trial within the prescribed time period, nor is this requirement contained in CrR 3.3. *See ABA Standards Relating to Speedy Trial,* Standard 12–2.2, Commentary at 7 (Approved Draft, 1978). *Cf.* CrR 3.3(d), 90 Wn.2d 1149, effective November 17, 1978.

For those who had followed the cases prior to *Aleshire* in which this court applied CrR 3.3, *Aleshire* should have been considered only an expected interpretation and expression of an existing rule. *See State v. Barton,* 17 Wn. App. 846, 565 P.2d 830 (1977) (McInturff, J., dissenting at page 849.)

If there were reasons for continuance or delay, as well may have been the case here, orderly procedures existed by which a continuance or delay might have been obtained. These procedures were not pursued, and it was not the responsibility of the defendant to do so. CrR 3.3(e)(2), (3). Neither has the prosecuting attorney brought to our attention any justification for failing to request a continuance. *See State v. Williams, supra* at 32.

As justification for the delay beyond 90 days—but not as a justification for failing to request a continuance—the State points to the testimony of the court administrator that the next ensuing jury term following the mistrial began January 10, 1977, and the earliest available date for the case was February 7, 1977, the date the retrial was set. The

State further argues that a defendant should not be retried before the same jury panel and that a second trial should be set at the next jury term with a new jury panel. This argument as to calendar problems is not persuasive.

The criminal rules task force which prepared CrR 3.3 as adopted by this court specifically adopted the philosophy of the ABA speedy trial draft:

> (1) the defendant can be prejudiced by delay, whatever the source; (2) such delays are contrary to the public interest in the prompt disposition of criminal cases; (3) if congestion excuses the long delays, there is lacking sufficient inducement for the state to remedy congestion; and (4) the calendar problems which arise out of trying to make maximum use of existing facilities do not ordinarily require time beyond that otherwise allowed.

Rule 3.3, Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure,* Comment to ABA Draft–Speedy Trial § 2.3, at 39–40 (West Pub. Co. ed. 1971).

The State cites *State v. Garman,* 76 Wn.2d 637, 458 P.2d 292 (1969), which discusses the standards for allowable delay under the statute (RCW 10.46.010) and urges these standards upon us. The difficulty with this position is that we clearly and unequivocally stated in *State v. Williams, supra,* that cases decided under RCW 10.46.010 are no longer applicable under CrR 3.3.

In his dissent in the original Court of Appeals consideration of this case, which he reiterated upon remand, Judge McInturff stated:

> I therefore cannot reason to any other conclusion that a retrial, after a mistrial, must occur within a maximum period of 90 days. It is inconceivable to me why a longer time span is necessary. The prosecution and the defense are prepared enough to have already engaged in one attempt to resolve the charges against the defendant. He, having endured the anxiety and public suspicion attendant to being charged, is twice more exposed to the mental anguish of, first, a trial without a verdict and, then, another delay prior to the second trial. Furthermore, in a mistrial there must have been enough reasonable doubt that the defendant committed the crime to prevent a 12–

man jury from resolving the question of his guilt. And, of course, the interests of the public in a speedy disposition of criminal charges have not been served under our rules. (Footnote omitted.) *Barton,* 17 Wn. App. at 852.

This court has spoken clearly and unequivocally on CrR 3.3 in the past. For whatever reason, the authorities in Benton County failed to bring defendant to trial within 90 days. Defendant is entitled to an order that the charges against him be dropped and dismissed with prejudice.

I dissent.

ROSELLINI and HOROWITZ, JJ., concur with DOLLIVER, J.

Reconsideration denied July 17, 1980.