[No. 8557-3-I. Division One. October 26, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JODY JURL DARDEN, *Appellant.*

*Kane & Meyers* and *A. J. Meyers,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael McKay, David Boerner,* and *Carol Hepburn, Deputies,* for respondent.

SWANSON, J.—Jody Jurl Darden appeals the judgment and sentence entered upon his conviction of three counts of first degree robbery while armed with a deadly weapon. His

appeal concerns the application of the version of CrR 3.3 in effect between November 17, 1978, and August 1, 1980. Amendment of Superior Court Criminal Rule 3.3, 90 Wn.2d 1149 (1978), further amended, 93 Wn.2d 1123 (1980).[1] Darden's appeal also alleges a violation of due process because the State delayed filing charges against him until he became 18 years of age.

On September 27, 1979, Jody Darden and Richard Horton were arrested by Seattle police officers on probable cause for investigation of five armed robberies. After his arrest, Darden gave a statement to the police and was held at the Seattle Youth Center because he was a juvenile. (He was born on November 2, 1961.) During the next few days, Darden was required to appear in a lineup, and his automobile was searched. He was released from custody on October 2, 1979, without charges being filed. Horton, the adult cosuspect, was charged with robbery by an information filed in superior court on October 9, 1979.

On November 2, 1979, 36 days after his arrest, Darden reached the age of 18. On December 28, 1979, 92 days after his arrest, the prosecutor filed a complaint against Darden in Seattle District Court. Although Darden was amenable to process, no arraignment occurred until January 25, 1980, 120 days after the arrest. On February 4, 1980, a preliminary hearing in the district court resulted in an order binding Darden over to superior court to face robbery charges. This preliminary hearing and bindover occurred 130 days after Darden's arrest.

---

[1]Former CrR 3.3(b) provided in part:

"(1) The time limits set forth in subsections (b)(2) and (b)(3) shall commence to run from the date: (a) *of the order binding the defendant over to the superior court following a preliminary hearing pursuant to JCrR 2.03 or (b) of the tenth day following the defendant's arrest in the event a preliminary hearing is not held or the charge is initially filed in the superior court.*

"(2) A defendant unable to obtain pretrial release from custody shall be brought to trial within 60 days of the applicable event set forth in subsection (b)(1).

"(3) A defendant who is released from custody shall be brought to trial within 90 days of the applicable event set forth in subsection (b)(1)." (Italics ours.)

In superior court, Darden filed a motion to dismiss for violation of CrR 3.3. The trial court found that no arraignment or preliminary hearing or trial occurred until more than 100 days after Darden's arrest. The court concluded, however, that because a superior court trial date was set within 60 days after the bindover, CrR 3.3 was not violated. The motion to dismiss was denied. Darden thereafter stipulated to the truth of the police reports and was found guilty on three counts of first degree robbery.

Subsequently, the Supreme Court issued its decision in *State v. Edwards,* 94 Wn.2d 208, 616 P.2d 620 (1980), which holds that the preliminary hearing pursuant to JCrR 2.03 must occur within 100 days of arrest. Darden contends that the holding in *Edwards* applies to cases tried prior to the date of the decision and that because the preliminary hearing in the instant case occurred more than 100 days after the arrest, dismissal is mandated.

■■ While the *Edwards* decision purports merely to construe an existing rule, we recognized in *State v. Schapiro,* 28 Wn. App. 860, 864, 626 P.2d 546 (1981), that "*no one* could *reasonably* have anticipated *Edwards,* . . ." (Italics ours.)[2] In fact, our Supreme Court previously declared the rule was "clear" and did not "require or permit any construction." *State v. McIntyre,* 92 Wn.2d 620, 622, 600 P.2d 1009 (1979). Because the rule is clear on its face, its plain meaning dictates an interpretation that either an arrest *or* a bindover triggered the speedy trial time limits. The rule itself states no more and no less. The rule does not give priority to either event. The meaning given to CrR 3.3 by *Edwards* is contrary to both the rule's plain language and its almost universally accepted interpretation. The Washington State Judicial Council, *Twenty-Eighth Annual Report* (1979) explained this interpretation

---

[2]The statement in *Schapiro* at page 864, that the "rule announced in that case [*Edwards*] seems to be nothing more than an interpretation of an existing rule, the former CrR 3.3", is not necessary to the decision and must be regarded as dictum only.

at page 46:

> The 1978 version of the time for trial rule starts the period for trial from one of two events: the date of arrest or the date of bindover from district court. CrR 3.3(b)(1). One problem with this rule is the uncertainty of knowing when an arrest has occurred. In addition, the rule requires accurate communication among the prosecutor, law enforcement agencies, and the courts.
>
> CrR 3.3 currently permits prosecutors to avoid the arrest starting point by filing in district court, since there are no requirements as to when the bindover from district court must occur. The result has been frequent use of the preliminary hearing in district court as a means of delaying the starting point for the prescribed time limits.

Although it may be argued that the *Edwards* decision only interpreted an existing rule, it is clear beyond peradventure that the interpretation given altered the effect or application of the rule to the same extent as the adoption of a new procedural rule. To change the generally accepted meaning of a rule, contrary to its plain language, is tantamount to adopting a new rule, and it must be recognized as such. To say that is what the rule meant since its adoption employs a fiction and ignores reality.

In addition, *Edwards* speaks of "triggering events" and the "postponement of untimeliness"—terms and concepts which were not a part of CrR 3.3 as promulgated in 1978. *Edwards* also provides specifically that the time limits run from the first "applicable event" which occurs. No such requirement was previously present in the rule. The *Edwards* opinion simply eliminated language which caused the time to run from a bindover. In doing so, the *Edwards* court rewrote CrR 3.3 and adopted in effect a new procedural rule.

A retroactive application of *Edwards* to this case, requiring the dismissal of Darden's conviction, is too drastic a penalty. This is especially so in view of the fact that Darden claimed no prejudice. While it must be acknowledged that the Supreme Court decision in *Edwards* precluded this alternative which permitted the State to file charges in dis-

trict court without any time limit until the preliminary hearing, the *Edwards* decision clearly added the 100–day rule for district court preliminary hearings and thereby created a *new* procedural rule. Logically, such a change must be treated as the adoption of a new rule and given prospective application only. *State v. Barton,* 93 Wn.2d 615, 611 P.2d 789 (1980).

Further, it must be remembered that the State complied fully with the provisions and interpretations of CrR 3.3 as they existed prior to the decision in *Edwards* which occurred subsequent to the trial in the instant case. The State had only the plain language of CrR 3.3 to guide it in implementation of the rule. The wording of the rule logically indicates that one might count either from the order of bindover or from the 10th day following a defendant's arrest. No other mode of calculation is clearly apparent from a plain reading of the rule. In addition, there was no foreshadowing of the *Edwards* interpretation which reasonably might have put the State on notice. Consequently, the State justifiably relied on its plain reading of CrR 3.3, as reinforced by the Judicial Council's interpretation.

Also, we must not disregard traditional notions of fairness to both parties. We must insure the defendant a fair trial. But here the defendant makes no claim of prejudice. He was found guilty on stipulated evidence. He makes no contention that his constitutional speedy trial rights were violated.

We believe the principle of fairness applies to the State as well as to the defendant. To penalize the State by dismissing defendant's armed robbery convictions for its failure to anticipate a decision which we said in *Schapiro* at page 864, "no one could reasonably have anticipated," is unacceptable. Therefore, we will give *Edwards* prospective application only.

Appellant next claims that the trial court erred in "exercising immediate jurisdiction of the case in violation of appellant's constitutional right to due process and equal protection of the law after circumventing appropriate juve-

nile court proceedings." He bases this claim on the 92–day delay from his arrest until the filing of charges. Appellant concedes that this issue was not raised at the trial court level but claims this is a due process right which can be raised for the first time on appeal. We disagree.

■■ Our Supreme Court has made it clear that a defendant has no constitutional right to be tried in juvenile court. *State v. Kramer*, 72 Wn.2d 904, 435 P.2d 970 (1967). It is equally clear that the age of the defendant at the time of trial determines whether adult or juvenile jurisdiction attaches. *State v. Setala*, 13 Wn. App. 604, 536 P.2d 176 (1975).

In this case, Darden became 18 on November 2. He was arrested on September 27, just 36 days before his 18th birthday. Thus, regardless of when the State actually charged Darden, he almost certainly would have been 18 at the time of trial so that the State would have been able to proceed against him as an adult in superior court. Moreover, the delay in charging Darden was caused by the State's investigation of the circumstances concerning Darden's confession. Because of discrepancies in the Darden file about the voluntariness of that confession to Seattle police officers, the State reasonably chose to resolve this issue first before filing any charges. There was no intentional delay of proceedings to compel Darden to defend himself as an adult rather than as a juvenile. In fact, in the unchallenged trial court written findings of fact on Darden's motion to dismiss, the trial court specifically stated in finding of fact No. 12, "That the passage of time from the defendant's arrest on September 27, 1980, [*sic*] to the bindover on February 14, 1980, did not cause any prejudice to the defendant."

It would therefore appear that the investigative delay resulting in charging the defendant in adult court, rather than in juvenile court, is not a constitutional question which can be raised for the first time on appeal. It should be noted that our rules provide that only "manifest error affecting a constitutional right" may be raised for the first

time on appeal. RAP 2.5(a)(3). This is a limited exception. The comment to the rule itself states that only "certain constitutional questions can be raised for the first time on review." The issue before us regarding a delay in charging should be raised at the trial level, thereby giving the State an opportunity to justify such delay if, in fact, such delay on its face appears to affect defendant's right to a fair trial. In the instant case, the trial court found that no prejudice resulted. Consequently, the defendant was not adversely affected, and no error occurred.

The recent case of *State v. Hodges,* 28 Wn. App. 902, 626 P.2d 1025 (1981), is significantly different from the instant case. In *Hodges,* the defendant juvenile contended that the State unreasonably delayed his arraignment so that the juvenile court lost jurisdiction, prejudicing him by the dismissal of proceedings and by arraignment in adult court. The *Hodges* court stated at pages 904–05,

> We agree with the principle that a criminal defendant is denied due process when the juvenile court loses jurisdiction through delays in arraignment which the State cannot justify in some manner as reasonable.

The court then remanded the case for an evidentiary hearing on the question of whether the State could justify its delay in the defendant's arraignment.

We do not believe that the prosecutorial delay in charging the juvenile defendant in this case raises the same due process rights for loss of the benefits of juvenile court jurisdiction that might result from unjustified delays in arraignment. In *United States v. Lovasco,* 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977), the court was presented with a factual situation in which charges were not filed until 17 months after Lovasco had admitted possessing and selling stolen guns. Defendant established that the delay caused him to lose the testimony of two material witnesses. The court, nevertheless, held that investigative delay resulting in delayed prosecution does not deprive the defendant of due process even if his defense has been prejudiced by the lapse of time. It therefore appears clear that there is a sig-

nificant difference in the treatment of investigative delay resulting in a delay in charging a defendant, as opposed to unjustified delay in arraigning a defendant such as occurred in *State v. Hodges, supra.*

The judgment is affirmed.

DURHAM, J., concurs.

RINGOLD, A.C.J. (dissenting)—The majority conveniently disregards a recent decision of this court, *State v. Schapiro,* 28 Wn. App. 860, 626 P.2d 546 (1981), and cavalierly disposes of the decision in *State v. Edwards,* 94 Wn.2d 208, 616 P.2d 620 (1980), by holding that neither court meant what it said.

The majority concludes that *Edwards* changed CrR 3.3 and should be applied prospectively only, citing *State v. Barton,* 93 Wn.2d 615, 611 P.2d 789 (1980). The decision in *Edwards,* however, reflects a reading of the rule wholly consistent with the policy of strictly enforcing CrR 3.3. *State v. McIntyre,* 92 Wn.2d 620, 600 P.2d 1009 (1979); *State v. Barton,* 28 Wn. App. 690, 626 P.2d 509 (1981). *Edwards* holds that if a defendant is released from custody and no preliminary hearing occurs within 100 days of the arrest, the passage of 100 days from the arrest without a trial requires dismissal of the charges. A preliminary hearing more than 100 days after the arrest cannot recommence the time limits under CrR 3.3(b)(1)(a) because CrR 3.3(i)[3] mandates dismissal once the first time limit in CrR 3.3(b)-(1)(b) passes. The State, therefore, cannot invoke CrR 3.3(b)(1)(a) unless it obtains a preliminary hearing before the expiration of the time limit for trial in CrR 3.3(b)(1)(b). Because no trial or preliminary hearing occurred within 100 days of Darden's arrest, the rule should be strictly enforced and the case dismissed.

There is no basis for the majority's decision that the State reasonably believed the rule could be used to delay

---

[3]The applicable version of CrR 3.3(i) states: "A criminal charge not brought to trial as required by this rule shall be dismissed with prejudice."

the trial. The State was on notice that the rule protecting the accused's constitutional right to a speedy trial must be strictly enforced, *State v. McIntyre, supra.* We recently held in *State v. Schapiro, supra* at 864:

> The effect of the Supreme Court's construction of a statute has been described as follows:
>> It is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it. In other words, there is no "retroactive" effect of the court's construction of a statute; rather, once the court has determined the meaning, *that is what the statute has meant since its enactment.*
>
> (Citations omitted.) *Johnson v. Morris,* 87 Wn.2d 922, 927–28, 557 P.2d 1299 (1976). Rules of court should generally be construed in the same manner as statutes. *State v. McIntyre,* 92 Wn.2d 620, 600 P.2d 1009 (1979). *Thus, the rule in Edwards applies to cases tried before that decision was announced, including the present case.*

(Some italics mine.) Prospective application is warranted only where the decision creates a new procedural rule, not where it applies an existing rule in a manner consistent with a previously formulated policy of strict enforcement. *State v. McIntyre, supra.* The decision in *State v. Barton,* 93 Wn.2d 615, is distinguishable because it prospectively applied a prior decision that created a new procedural rule by filling a hiatus in CrR 3.3.

On the issue of the delay in filing charges, Darden conceded in the trial court that he was not prejudiced by the delay. I, therefore, agree that we should not address the issue for the first time on appeal. My colleagues, however, discuss the substantive issue at length and I must express my disagreement with their analysis.

Contrary to the view of the majority, the United States Supreme Court has held that the due process clause is implicated by an oppressive delay in filing charges. Proof of actual prejudice to the accused does not necessarily demonstrate a violation of due process, but it requires the court to consider the prejudice and the reasons for the delay

before deciding whether charges should be dismissed. *United States v. Lovasco,* 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977).

Had the charges in this case been filed before Darden's 18th birthday, the juvenile court could have issued an order extending jurisdiction beyond his 18th birthday for purposes of adjudicating the alleged offenses. RCW 13.40-.300(1)(c). The lost opportunity to be treated as a juvenile and the much harsher penalties of the adult system establish the prejudice in this case. *State v. Hodges,* 28 Wn. App. 902, 626 P.2d 1025 (1981). The majority incorrectly relies on *State v. Setala,* 13 Wn. App. 604, 536 P.2d 176 (1975), to demonstrate lack of prejudice. *Setala* was decided before the legislature created the authority to try an accused in juvenile court after he or she reached the age of 18. *State v. Bradley,* 20 Wn. App. 222, 580 P.2d 640 (1978).

Given the prejudice caused by the delay, the due process question requires an examination of the reasons for the delay. The majority opinion finds adequate reasons by accepting the representations of the State's counsel at oral argument. These representations, however, are not in the record, and we have no record of the reasons for the delay. If this issue were properly before us, we would have to remand for an evidentiary hearing and an application of the facts to the standard enunciated in *United States v. Lovasco, supra.* In my view, however, this issue is moot because the information should be dismissed due to the violation of CrR 3.3. *State v. Edwards, supra.*

I would reverse the judgment and dismiss the case.

Reconsideration denied November 10, 1981.

Review granted by Supreme Court January 22, 1982.