[No. 9322–3–I.   Division One.   January 11, 1982.]

THE STATE OF WASHINGTON, *Appellant,* v. BRIAN RUSSELL SCHMIDT, ET AL, *Respondents.*

*Norm Maleng, Prosecuting Attorney,* and *Carol Hepburn, Deputy,* for appellant.

*Ronald Kessler* of *Seattle–King County Public Defender Association, John W. Wolfe,* and *Laurence B. Finegold,* for respondents.

SWANSON, J.—The State appeals the dismissal on the basis of the speedy trial rule, CrR 3.3 in effect between November 17, 1978 and August 1, 1980, of cases against respondents Brian Schmidt, Shannon Wright, and Roger Marlatt. In each case the dismissal resulted from an application of the rule announced in *State v. Edwards,* 94 Wn.2d 208, 616 P.2d 620 (1980), to cases tried before August 21, 1980, the date on which *Edwards* was issued. Each defendant complained that the failure to have a preliminary hearing within 100 days of arrest violated CrR 3.3 as interpreted in *Edwards,* even though trial occurred within 100 days of bindover.

Brian Schmidt is charged with second degree burglary. The pertinent dates in his case are as follows:

| Date | Event | Days from Arrest |
|------|-------|------------------|
| 11/14/79 | Arrested | 0 |
| 11/16/79 | Released | 2 |
| 3/3/80 | Complaint filed in district court | 110 |
| 3/17/80 | Arraigned; filed motion to dismiss for lack of speedy trial | 124 |
| 3/31/80 | Bindover | 138 |
| 4/3/80 | Arraignment; pleaded not guilty | 141 |
| 5/2/80 | Omnibus hearing; defendant objected to date at which trial set | 170 |
| 6/16/80 | Trial date | 215 |
| 8/21/80 | *Edwards* announced | 281 |
| 9/3/80 | Motion for reconsideration filed | 294 |
| 9/16/80 | Motion for reconsideration heard and granted | 307 |

Roger Marlatt is charged with first degree arson. The pertinent dates in his case are as follows:

| Date | Event | Days from Arrest |
|------|-------|------------------|
| 1/22/80 | Arrested | 0 |
| 6/3/80 | Charged in district court | 133 |
| 7/3/80 | Preliminary hearing. Matter bound over 8 days. Claims speedy trial objection before bindover | 163 |
| 7/30/80 | Trial set for Oct. 20; speedy trial objection | 190 |
| 8/21/80 | *Edwards* announced | 212 |
| 9/4/80 | Motion to dismiss on speedy trial objection granted | 226 |

Shannon Wright is charged with violation of the Uniform Controlled Substances Act. The pertinent dates in his case are as follows:

| Date | Event | Days from Arrest |
|---|---|---|
| 10/11/79 | Arrested | 0 |
| 1/17/80 | Complaint filed in district court | 98 |
| 2/13/80 | Prehearing, bindover | 125 |
| 2/19/80 | Information filed in Superior Court | 131 |
| 2/21/80 | Arraigned; objected to trial date per CrR 3.3 | 133 |
| 5/5/80 | Motion to dismiss under CrR 3.3 denied | 207 |
| 6/5/80 | Found guilty | 238 |
| 6/17/80 | Moved to dismiss for violation of CrR 3.3 | 250 |
| 8/21/80 | *Edwards* announced | 315 |
| 8/26/80 | Again filed motion to dismiss and motion for order arresting judgment | 320 |
| 9/5/80 | Both of defendant's motions granted | 330 |

Respondents contend that they should receive benefit of the *Edwards* holding as their cases, which raise the same speedy trial issue decided in *Edwards,* were on appeal when *Edwards* was announced. We disagree, and hold that the rule announced in *Edwards* does not apply to respondents or to any other case wherein the "triggering event" mentioned in *Edwards* occurred before August 21, 1980.

I

MEANING OF CrR 3.3 BEFORE *EDWARDS*

CrR 3.3(b), the speedy trial rule, provided:

(3) A defendant who is released from custody shall be brought to trial within 90 days of the applicable event set forth in subsection (b)(1).

The "applicable events" are established by CrR 3.3(b)(1):

(1) The time limits . . . shall commence to run from the date: (a) of the order binding the defendant over to the superior court following a preliminary hearing pursuant to JCrR 2.03 or (b) of the tenth day following the defendant's arrest in the event a preliminary hearing is not held or the charge is initially filed in the superior court.

The plain language of CrR 3.3(b)(1)(a) provided that the 90–day period may commence from the date the order of bindover to superior court is issued. CrR 3.3(b)(1)(b), equally unambiguous, provided that the 90–day period may begin from the 10th day following arrest in the event either a preliminary hearing is not held or the charge is initially filed in superior court. Thus, (b)(1)(b) applies only to a case in which (1) a preliminary hearing is not held, or (2) the charge is initially filed in superior court. Neither part of (b)(1)(b) applies to the cases at bar as a preliminary hearing was held and the cases were initially filed in district court; thus (b)(1)(a) applies. This is an accurate construction as the disjunctive "or" joins (b)(1)(a) and (b)(1)(b) and therefore provides (b)(1)(a) as an alternative means of meeting the speedy trial requirement. The State fulfilled (b)(1)(a) as the trials began within 90 days of the order binding respondents over to the superior court following a preliminary hearing.

It has been urged upon this court that the speedy trial rule was promulgated to remove from the prosecutor the option of substantially delaying a trial, and that our reading of the rule in the present case frustrates this purpose as the State can manipulate the date from which the 90–day period begins by bringing the case first in district court. Even if this were true, it is a fundamental rule of legal construction that the policy behind a rule is to be examined only if the rule is ambiguous. The rule at present under consideration has been "clear" on its face and does not "require or permit any construction." *State v. McIntyre*, 92 Wn.2d 620, 622, 600 P.2d 1009 (1979). As conceded in the dissent in *State v. Darden*, 30 Wn. App. 460, 469, 635 P.2d 760 (1981), the issue is not one of filling a hiatus but of applying the text of CrR 3.3. To change the clear meaning of the rule by argument from underlying policy, ignoring the plain meaning of the text, leads to the destruction of the idea of law. Once freed of text, this mode of argument can reach almost any result. And even if the result could be defended, the method of the court in

imposing it could not. It has been implied that normal rules of statutory construction do not apply to CrR 3.3 as the Supreme Court wrote the rule. This argument was put to rest in *McIntyre,* in which the court quoted itself in *State ex rel. Schillberg v. Everett District Justice Court,* 90 Wn.2d 794, 797, 585 P.2d 1177 (1978):

> As the author of these rules, this court, of course, is in a position to reveal the actual meaning which was sought to be conveyed. However, we approach them as though they had been drafted by the legislature, and give the words their ordinary meaning, reading the language as a whole and seeking to give effect to all of it.

*McIntyre,* at 622.

## II
### EDWARDS DECISION

The Supreme Court in *Edwards* interpreted out of CrR 3.3(b)(1)(b) the phrase "in the event a preliminary hearing is not held," and completely eliminated CrR 3.3(b)(1)(a), holding that the preliminary hearing must occur within 100 days of arrest. For the reasons we have given, we believe the meaning attributed to CrR 3.3 by *Edwards* is contrary to the rule's plain language. It is, as well, contrary to the almost universally accepted interpretation of CrR 3.3. The Washington State Judicial Council, for example, explained the meaning of CrR 3.3 as follows:

> The 1978 version of the time for trial rule starts the period for trial from one of two events: the date of arrest or the date of bindover from district court. CrR 3.3(b)(1). One problem with this rule is the uncertainty of knowing when an arrest has occurred. In addition, the rule requires accurate communication among the prosecutor, law enforcement agencies, and the courts.
>
> CrR 3.3 currently permits prosecutors to avoid the arrest starting point by filing in district court, since there are no requirements as to when the bindover from district court must occur. The result has been frequent use of the preliminary hearing in district court as a means of delaying the starting point for the prescribed time limits.

Washington State Judicial Council, *28th Ann. Rep.* at 46 (1979).

Contrary to the implication in *Edwards, McIntyre* did not foreshadow *Edwards. McIntyre* was filed directly in superior court so *no preliminary hearing was held. McIntyre,* at 621. Thus, *McIntyre* fell entirely within the provisions of CrR 3.3(b)(1)(b); the interaction between (b)(1)(a) and (b)(1)(b), and the application of (b)(1)(b) if a preliminary hearing is held were not issues in *McIntyre.*

█ Although it may be argued that *Edwards* involved only an interpretation of an existing rule, it is clear beyond cavil that the decision altered the effect of the rule to the same extent as the adoption of a new procedural rule. *Edwards* speaks of "triggering events" and the "postponement of untimeliness," terms and concepts which are not a part of CrR 3.3 as promulgated in 1978. *Edwards* also provides specifically that the time limits run from the *first* "applicable event," although no such requirement was previously present in the rule. *See State v. Darden, supra.* The *Edwards* opinion simply eliminated language which caused the time to run from the bindover. In doing so, the court in *Edwards* rewrote CrR 3.3 and adopted in effect a *new* procedural rule.

## III
### EDWARDS DOES NOT APPLY TO CASES WHEREIN THE "TRIGGERING EVENT" OCCURRED BEFORE AUGUST 21, 1980

We do not question the Supreme Court's authority to issue *Edwards*; nor do we reach the question of which we are bound by, the plain language of the rule or by the Supreme Court's version of the rule. We hold, instead, that the rule announced in *Edwards* does not apply to the case at bar or to any case wherein the "triggering event" mentioned in *Edwards* occurred before August 21, 1980. We realize that the Supreme Court's version of CrR 3.3 in *Edwards* precluded the State from filing charges in district court without any time limit until the preliminary hearing,

and clearly added the 100–day rule for district court preliminary hearings, thereby creating a new procedural rule. Logically, such a change must be treated as the adoption of a new rule.

For guidance as to whether a new rule should be applied retroactively from the date it is announced, we turn to *State v. Aleshire,* 89 Wn.2d 67, 568 P.2d 799 (1977) and *State v. Barton,* 93 Wn.2d 615, 611 P.2d 789 (1980). *Aleshire* held that CrR 3.3 requires a defendant in custody to be tried within 60 days of the preliminary appearance, and that the rule is not violated if the first speedy trial results in a retrial 115 days after the preliminary appearance. In dicta, the court stated that under CrR 3.3 a retrial must occur within the same applicable time period set for the original trial. In *Barton,* the court found that the holding and above mentioned dicta in *Aleshire* constitute a newly adopted procedural rule. The court denied application of the *Aleshire* rule to petitioner Barton, whose appeal was pending when *Aleshire* was issued. The court reasoned that since the *Aleshire* rule was not evident from the language in CrR 3.3, the new rule should not be applied to cases tried before *Aleshire* was released. To emphasize the importance of the words present in CrR 3.3, the court quoted with approval the dissenting statement of Justice Rosellini in *State v. Parmele,* 87 Wn.2d 139, 143–45, 550 P.2d 536 (1976):

> I do not believe that either lawyers or laymen should be expected to read into the rules qualifications or modifications which this court did not see fit to promulgate.
>
> After all, we wrote the rules. We put there what we felt should be included, and presumably we omitted what we felt should be omitted. . . .
>
> . . .
> . . . If it [the court] thinks they are inadequate or inappropriate, it should rewrite them. But it ought not to read into them provisions which are not there and read out of them the words that are written. They are complicated enough as they are. To further obscure them is to bring into focus the question whether the court itself, in

its rule making operations, is not bordering on the denial of due process of law.

■ The majority in *Barton* explicitly agreed with the concurring opinion of Chief Justice Utter, which discusses three factors to weigh when considering whether to apply a rule retroactively:

> (1) The purpose of the new rule and whether retroactive application of the rule would effectively serve that purpose; (2) whether and to what extent law enforcement agencies, including courts, justifiably relied upon the preexisting rule; and (3) the effect of retroactive application upon the administration of justice, including the number of jurisdictions whose past procedures did not measure up to the new rule, the probable percentage of those individuals whose former trials would be invalidated by retroactive application of the new rule coupled with the practical difficulties which would be encountered in retrials of such persons, and the availability of remedies to correct the deficiencies aimed at by the new rule other than invalidation of former proceedings. All three factors must be examined, and the process is one of balancing each against the other.

*Barton*, at 619, quoting *Brumley v. Charles R. Denney Juvenile Center*, 77 Wn.2d 702, 707, 466 P.2d 481 (1970).

Consideration of the first factor reveals that the retroactive application of *Edwards* would not serve the purpose of the rule. The policy objectives of speedy trial guaranties are to "prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120, 15 L. Ed. 2d 627, 86 S. Ct. 773 (1966). Charges are dismissed when the speedy trial rule is violated. The purpose of dismissal is to deter violations of the rule. Conduct which has occurred, as in the cases at bar, cannot be deterred; therefore, the purpose behind the policy of dismissal would not be served by retroactive application. Furthermore, retroactive application will not have any deterrent effect as to cases not yet

filed as the speedy trial rule was changed 21 days before *Edwards* was announced.

The second of the three retroactivity standards also lends support for the position that *Edwards* should not apply retroactively. It should be remembered that the State complied fully with the provisions and interpretations of CrR 3.3 as they existed at the time of the trial in the instant case, which occurred prior to the *Edwards* decision. The State had only the plain language of CrR 3.3 to guide it in implementation of the rule. The wording of the rule logically indicates that one might count either from the order of bindover or from the 10th day following a defendant's arrest. No other mode of calculation is possible from a plain reading of the rule. Furthermore, there was no foreshadowing of the *Edwards* interpretation which reasonably might have put the State on notice. Consequently, the State justifiably relied on its plain reading of CrR 3.3, as reinforced by the Judicial Council's interpretation. It is mistaken to assert that because the State had notice that the rule protecting the accused's right to a speedy trial will be strictly enforced, *Edwards* could have been anticipated. As the court said in *State v. Striker,* 87 Wn.2d 870, 877, 557 P.2d 847 (1976), "past experience has shown that unless a strict rule is applied, the right to a speedy trial as well as the integrity of the judicial process, cannot be effectively preserved." Today we strictly construe and strictly apply the English language meaning of the words found in former CrR 3.3.

The third retroactivity factor also calls for nonretroactive application of *Edwards.* In Division One alone, almost two dozen cases have been appealed on the question of whether the *Edwards* rule is retroactive. We anticipate others will come before the Court of Appeals. Retroactive application of the *Edwards* rule would result in outright dismissal in some cases in which a defendant has stipulated to the truth of police reports, as well as in some in which the defendant was found guilty on controverted evidence. We believe the administration of justice and integrity of the judicial pro-

cess would be damaged by dismissing convictions because the State failed to anticipate a decision which we said in *State v. Schapiro,* 28 Wn. App. 860, 864, 626 P.2d 546 (1981), "no one could reasonably have anticipated."

■ Thus, none of the factors relevant to the retroactivity determination provides support for applying *Edwards* retroactively. We conclude it must be found that *Edwards* is not to be applied to any case wherein the "triggering event" occurred before *Edwards* was announced. Employing the same criteria we use today, the Washington Supreme Court and the United States Supreme Court have denied retroactive application to new interpretations of court rules. *See, e.g., Wood v. Morris,* 87 Wn.2d 501, 514–15, 554 P.2d 1032 (1976); *see also Halliday v. United States,* 394 U.S. 831, 832, 23 L. Ed. 2d 16, 89 S. Ct. 1498 (1969). We note in passing that CrR 3.3 is simply a procedural rule, not a constitutional right. If excessive delay has prejudiced a defendant's right to present his case at trial, a remedy exists under constitutional provisions for a speedy trial.

Finally, we wish to comment on the argument that we are bound by dicta found in a case recently decided in our division, and that our decision today limits *Edwards* to its facts. It has been maintained, disingenuously, that we are bound in the case at bar by the following:

> Although no one could reasonably have anticipated *Edwards,* the rule announced in that case seems to be nothing more than an interpretation of an existing rule, the former CrR 3.3.
>
> The effect of the Supreme Court's construction of a statute has been described as follows:
>
>> It is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it. In other words, there is no "retroactive" effect of the court's construction of a statute; rather, once the court has determined the meaning, *that is what the statute has meant since its enactment.*
>
> (Citations omitted.) *Johnson v. Morris,* 87 Wn.2d 922,

927–28, 557 P.2d 1299 (1976). Rules of court should generally be construed in the same manner as statutes. *State v. McIntyre*, 92 Wn.2d 620, 600 P.2d 1009 (1979). Thus, the rule in *Edwards* applies to cases tried before that decision was announced, including the present case.

*Schapiro,* at 864.

■ The issue in *Schapiro* was whether CrR 3.3 is violated if a preliminary hearing begins 88 days after arrest but does not result in a bindover until 102 days after arrest. The court held that a preliminary hearing begun within 88 days of arrest does not violate CrR 3.3. The holding does not, of course, legally or logically bind our decision making in a substantially different set of facts, such as presented in the cases at bar in which the preliminary hearing occurred over 100 days after arrest. Nor are we bound by assertions within *Schapiro,* such as those quoted above, which are dicta as they are not essential to the adjudication of the case. Dicta are opinions made without argument or full consideration of the point, are not the professed deliberate determinations of the judge, and do not embody the resolution of the court. We choose not to follow the dicta in *Schapiro.*

We are aware the Supreme Court replaced CrR 3.3 with a new rule effective August 1, 1980. As we do not apply the *Edwards* rule to cases wherein the "triggering event" occurred before August 21, 1980, and since prospective application is precluded by the new rule, respondents point out that we are limiting *Edwards* to its facts. We find no reason to speculate as to whether the Supreme Court intended or foresaw this result. This court is bound by the text of the rule as it existed prior to August 21, 1980. The anomaly created by the new rule effective August 1, 1980, and the *Edwards* revision does not alter the binding authority of an unambiguous rule on this court's decision making.

The Superior Courts erred when they dismissed the cases against respondents. Respondents were not denied a speedy trial under CrR 3.3.

The judgment is reversed.

CORBETT, J., concurs.

RINGOLD, J. (dissenting)—Again I must disagree with the majority opinion for the reasons expressed in my dissent in *State v. Darden,* 30 Wn. App. 460, 469, 635 P.2d 760 (1981). The majority errs in approving a reading of CrR 3.3 which contrary to the Supreme Court's holding in *State v. Edwards,* 94 Wn.2d 208, 616 P.2d 620 (1980) would allow the prosecutor to play fast and loose with the time limits by filing a complaint in district court and not holding a preliminary hearing within any fixed time. My colleagues believe that "the meaning attributed to CrR 3.3 by *Edwards* is contrary to the rule's plain language."

The Washington State Judicial Council comments cited by the majority are not authority for the correctness of the majority's reading of CrR 3.3. On the contrary, they merely point out that the state prosecuting attorneys abused the rule in their day–to–day practice. Such practice, avoiding as it does the clear intent of a "speedy trial" rule, did not and cannot establish the meaning of the rule. Under the interpretation urged by the State and the majority herein, the rule would permit the State to file a complaint in district court and, by the simple expedient of refusing to move for a preliminary hearing until convenient, delay the trial date for as long as desired, subject only to the constitutional speedy trial right.[1]

This result was clearly not intended under the rules. Although JCrR 2.03 did not provide for strict time limits within which a preliminary hearing would have to be held, the clear inference is that it must be held, if at all, "without

---

[1] In *State v. Darden,* 30 Wn. App. 460, 635 P.2d 760 (1981), for instance, the State charged two defendants with the same offense, one in superior court and one in justice court. The superior court charge would have to be tried within 100 days of arrest. By holding a preliminary hearing 130 days after Darden was arrested, the State was able to avoid the intent of the rule and try Darden in superior court nearly 6 months after his arrest.

unnecessary delay."

The rules provide for continuances, making them a matter of discretion within the control of the court. CrR 3.3(f) (now at CrR 3.3(h)) provides:

> **Continuances.** Continuances or other delays may be granted as follows:
> (1) Upon written agreement of the parties which must be personally signed by the defendant or all defendants and must be approved by the court.
> (2) On motion of the state or on its own motion or on the motion of a party the court may continue the case when required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of his defense. The court must state its reasons therefor.

It has long been recognized that speedy trial rules will succeed only if the courts retain control of the scheduling of hearings. A continuance to pursue further investigation is available within the guidelines of the rule, subject to judicial control. The majority reads CrR 3.3 in such a way as to obviate the need for the State to request such a continuance.

The rule means what *Edwards* says it means. Prior to *Edwards* no appellate court had passed on the meaning of the rule in a situation where a preliminary hearing and bindover occur after the expiration of the time limit. *Edwards* represents a definitive statement, by the body which promulgated the rule, as to its meaning and application in this context. It is unambiguous.

The trial courts did not err in dismissing the charges against these defendants. I would affirm.

Reconsideration denied February 23 and 25, 1982.

Review by Supreme Court pending September 10, 1982.