HUMPHREYS, Judge.
By order dated January 9, 2002, this Court, on its own motion and pursuant to Code § 17.1-402(D), granted a hearing en bane to consider the motion of Arthur C. Krieger, II, requesting counsel and transcripts on appeal at the expense of the Commonwealth. Upon hearing said motion en banc, we hereby deny Krieger’s motion for the reasons set forth below.
I. Background
The relevant procedural history in this matter is uncontroverted. On November 17, 1999, Krieger appeared before the Circuit Court of the City of Petersburg on a hearing to show cause, related to a charge of maintaining a public nuisance. The trial court found Krieger in civil contempt for disobedience of its orders to abate a nuisance and sentenced him to ten days in jail, all of which were suspended on the condition he comply with the terms and conditions of prior orders entered by the court within ninety days.
*575 On February 10, 2000, Krieger appeared pro se before the court for a hearing to review his compliance with the court’s November 17, 1999 ruling. Although the trial court found that Krieger was indigent, his request for court-appointed counsel was denied. The Commonwealth then presented evidence that Krieger had failed to comply with the conditions of the November 17,1999 ruling. Krieger was ultimately found to be in contempt and was remanded into custody to serve the ten-day jail sentence. However, the final order entered by the court provided that Krieger would be entitled to immediate release upon his “demonstrated unconditional willingness to comply with the court’s prior order.”
On February 22, 2000, Krieger filed pro se a notice of appeal of the February 10, 2000 ruling. He requested court-appointed counsel on appeal and transcripts of the proceedings below, at the Commonwealth’s expense. The trial court denied both requests. We granted a hearing en banc solely on the issues of whether he is entitled to court-appointed counsel on appeal, as well as transcripts of the lower court proceedings at the expense of the Commonwealth.[1]
II. Analysis
The question of whether an indigent defendant, found guilty of civil contempt of court and sentenced to jail, is entitled to court-appointed counsel on appeal is one of first impression in Virginia.
As a threshold matter, it is axiomatic that the Sixth Amendment provides certain safeguards in “all criminal prosecutions.” U.S. Const. amend. VI. Further, the Fourteenth Amendment mandates that: “[n]o state shall ... deprive any person of ... liberty ... without due process of law....” U.S. Const, amend. XIV. Thus, the Supreme Court of the United. States has held that “absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was repre *576 sented by counsel at his trial.” Argersinger v. Hamlin, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972).
 However, there is no constitutional or statutory right for an indigent to have counsel appointed for trial in a civil case. See Watson v. Moss, 619 F.2d 775, 776 (8th Cir.1980); Darnell v. Peyton, 208 Va. 675, 677, 160 S.E.2d 749, 750 (1968) (“Code § 14.1-183 (Repl.Vol.1964) [ (now Code § 17.1-606) ], which provides that in a civil action an indigent ‘shall have, from any counsel whom the court may assign him, ... all needful services ..., without any fees ... ’ does not specifically require the appointment of such counsel”).[2] See also Wolfolk v. Rivera, 729 F.2d 1114, 1119-20 (7th Cir.1984); Castner v. Colorado Springs Cablevision, 979 F.2d 1417, 1420 (10th Cir.1992); cf. Plumer v. Maryland, 915 F.2d 927, 931-32 (4th Cir.1990) (noting “the well-established principle that the right to counsel applies only to criminal or quasi-criminal proceedings and does not extend to administrative license revocation proceedings”); Ferguson v. Gathright, 485 F.2d 504, 506-07 (4th Cir.1973) (holding neither the Due Process Clause nor the Sixth Amendment requires the appointment of counsel in the civil adjudication of a loss of driving privileges), cert. denied, 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974). Nevertheless, in civil matters, the “presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty,” is weighed against other elements in the due process decision to determine, on a case-by-case basis, whether court-appointed counsel is warranted. Lassiter v. Department of Social Services, 452 U.S. 18, 26-27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). Such elements include the nature of the private interests at stake, *577 the government’s interest, and the risk that the procedures used will lead to erroneous decisions. Id. (citing Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).[3]
Similarly, in the appellate context, the United States Supreme Court has held that “where the merits of the one and only [criminal] appeal an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor.” Douglas v. California, 372 U.S. 353, 357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963); see also Cabaniss v. Cunningham, 206 Va. 330, 333, 143 S.E.2d 911, 913 (1965) (“the failure to appoint counsel to assist an indigent defendant in making an appeal from a conviction is a denial of equal protection and due process guaranteed to him under the Federal Constitution and the Virginia Bill of Rights”). However, in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court held that “neither the Due Process Clause nor the Equal Protection Clause requires a State to provide counsel at state expense to an indigent prisoner pursuing a discretionary appeal in the state system....” M.L.B. v. S.L.J., 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996) (citing Ross, 417 U.S. at 610, 612, 616-18, 94 S.Ct. at 2443-44, 2446-47).[4]
From these cases it is clear that the right to appointed counsel on appeal derives not from some statutory grant, but from the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as well as from the Sixth Amend *578 ment in criminal cases. See Cabaniss, 206 Va. at 334, 143 S.E.2d at 914 (noting that “ ‘[i]n all criminal prosecutions, the accused shall enjoy the right ... to have assistance of counsel for his defense.’ The right to defend includes the right of assistance in perfecting an appeal.” (quoting Gideon v. Wainwright, 372 U.S. 335, 339, 83 S.Ct. 792, 794, 9 L.Ed.2d 799 (1963))). As the Supreme Court held in Ross, it is rudimentary that
[a]t the trial stage of a criminal proceeding, the right of an indigent defendant to counsel is fundamental and binding upon the States by virtue of the Sixth and Fourteenth Amendments. But there are significant differences between the trial and appellate stages of a criminal proceeding .... The fact that an appeal has been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis.
Ross, 417 U.S. at 610-11, 94 S.Ct. at 2443-44. Thus,
[ejqual protection requires the state to provide appointed counsel for appeal and a right of appeal at public expense in those classes of cases in which indigents are entitled to appointed counsel at the trial level and a right of appeal is provided. This principle was developed in criminal cases but it applies to other disputes involving matters of such a fundamental nature as to require appointment of counsel at the trial level, such as juvenile delinquency proceedings and proceedings concerning possible permanent deprivation of parental rights.... Where issues of a less fundamental nature are involved, the right to pursue remedies at public expense is considerably more limited.
In re Lewis, 88 Wash.2d 556, 564 P.2d 328, 329-30 (1977), overruled on other grounds by Grove v. State, 127 Wash.2d *579 221, 897 P.2d 1252 (1995) (citations omitted). See also, In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967); Lassiter, 452 U.S. at 32-33, 101 S.Ct. at 2162-63.
The United States Supreme Court has specifically declined to discourage those States that have, as a matter of legislative choice, made counsel available to litigants at all stages of judicial review. See Ross, 417 U.S. at 618, 94 S.Ct. at 2447-48. Nevertheless, our General Assembly has created no such statutory right, outside of the criminal context. See Tyler v. Garrison, 120 Va. 697, 697, 91 S.E. 749, 749 (1917) (“This day came again the parties, by counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and argument of counsel, is of opinion that section 3538 of the Code of Virginia [ (now Code § 17.1-606) ] does not apply to appellate proceedings.”). See also Dodson v. Director, Dept. of Corrections, 233 Va. 303, 309, 355 S.E.2d 573, 577 (1987) (holding that Code § 19.2-157 provides an indigent person charged with the commission of a crime punishable by death or imprisonment is entitled to counsel throughout the appellate process). Accordingly, we must consider the nature of the case below, as well as the nature of the appeal and the apparent due process and equal protection concerns, in order to determine whether denial of Krieger’s motion for court-appointed counsel on appeal would effectively “bolt the door to equal justice.” M.L.B., 519 U.S. at 110, 117 S.Ct. at 560.
We first note that the “labels affixed to the [contempt] proceeding or the relief imposed under state law ... are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law.” Hicks v. Feiock, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988). Thus, the fact that the trial court in this instance labeled Krieger’s contempt proceeding as “civil” is of no moment, and we must first make a threshold determination concerning the nature of the proceeding in order to further *580 consider whether Krieger is entitled to court-appointed counsel on appeal.[5]
The question of how a court determines whether to classify the relief imposed in a given proceeding as civil or criminal in nature, for the purposes of applying the Due Process Clause and other provisions of the Constitution, is one of long standing, and its principles have been settled at least in their broad outlines for many decades.

Id.

[T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. “If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.” Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if “the defendant stands committed unless and until he performs the affirmative act required by the court’s order,” and is punitive if “the sentence is limited to imprisonment for a definite period.” Id. at 442, 31 S.Ct. at 498.
}jc s{« :■« sj; :}:
“The distinction between refusing to do an act commanded,—remedied by imprisonment until the party performs the required act; and doing an act forbidden,—punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment.” Gompers, 221 U.S. at 443, 31 S.Ct. at 499. In the former instance, the *581 conditional nature of the punishment renders the relief civil in nature because the contemnor “can end the sentence and discharge himself at any moment by doing what he had previously refused to do.” Id. [] at 442, 31 S.Ct. at 498. In the latter instance, the unconditional nature of the punishment renders the relief criminal in nature because the relief “cannot undue or remedy what has been done nor afford any compensation” and the contemnor “cannot shorten the term by promising not to repeat the offense.” [Id.]
$ ^ ^
Any sentence “must be viewed as remedial,” and hence civil in nature, “if the court conditions release upon the contemnor’s willingness to [comply with the order].” Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). By the same token, in a civil proceeding the court “may also impose a determinate sentence which includes a purge clause.” Id.[ ] at 370, n. 6, 86 S.Ct. at 1536 n. 6 (emphasis added). “On the contrary, a criminal contempt proceeding would be characterized by the imposition of an unconditional sentence for punishment or deterrence.” Id.[ ] at 370, n. 5, 86 S.Ct. at 1535 n. 5.
Id. at 634-35, 108 S.Ct. at 1431.
“The civil contemnor thus[,] ‘ “carries the keys of his prison in his own pocket[.]” ’ At any moment, ‘[h]e can end the sentence and discharge himself ... by doing what he had previously refused to do.’ ” International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 844, 114 S.Ct. 2552, 2566, 129 L.Ed.2d 642 (1994) (Rehnquist, C.J., and Ginsburg, J., concurring in part and concurring in judgment) (quoting Gompers, 221 U.S. at 442, 31 S.Ct. at 498 (quoting In re Nevitt, 117 F. 448, 451 (8th Cir.1902))). In addition, “the fact that a contemnor has his sentence suspended and is placed on probation cannot be decisive in defining the civil or criminal nature of the relief, for many convicted criminals are treated in exactly this manner for the purpose (among others) of influencing their behavior.” Hicks, 485 U.S. at 637, 108 S.Ct. at 1432. However, “[a] suspended sentence with a term of *582 [determinate] probation is not equivalent to a conditional sentence that would allow the contemnor to avoid or purge these sanctions.” Id. at 639 n. 11, 108 S.Ct. at 1434 n. 11.
Accordingly, although the relief imposed here was a determinate sentence, the court included a purge clause that would free Krieger from any further obligation to the court.[6] Thus, Krieger “carried the keys” of his own cell door in his pocket. Therefore, the contempt proceeding and his resulting sentence were clearly civil in nature. See id. at 640, 108 S.Ct. at 1434; Shillitani, 384 U.S. at 370 n. 6, 86 S.Ct. at 1536 n. 6; Gompers, 221 U.S. at 442, 31 S.Ct. at 498.[7] Thus, on this *584 record, in considering the interests at stake of the parties and in applying the Mathews balancing test, we find neither an interest of a fundamental nature, nor a proceeding so complex as to implicate equal protection or due process concerns which would entitle Krieger to court-appointed counsel to pursue his appeal of the civil contempt order. See Mathews, 424 U.S. at 335, 96 S.Ct. at 902. Indeed,
[t]he Fourteenth Amendment “does not require absolute equality or precisely equal advantages,” San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973), nor does it require the State to “equalize economic conditions.” Griffin v. Illinois, 351 U.S. [12, 23, 76 S.Ct. 585, 592, 100 L.Ed. 891 (1956) ] (Frankfurter, J., concurring).... [However,] [t]he State cannot adopt procedures which leave an indigent defendant “entirely cut off from any appeal at all,” by virtue of his indigency, Lane v. Brown, 372 U.S. [477, 481, 83 S.Ct. 768, 771, 9 L.Ed.2d 892 (1963),] or extend to such indigent defendants merely a “meaningless ritual” while others in better economic circumstances have a “meaningful appeal.” Douglas, [372 U.S.] at 358[, 83 S.Ct. at 817].
Ross, 417 U.S. at 612, 94 S.Ct. at 2445 (holding, in the criminal context, where a criminal defendant, who has been brought before the court at the instance of the State, is provided with counsel at trial and on appeals as of right, there is no constitutional requirement that he also be provided with coun *585 sel for further discretionary appeals). See also Lindsey v. Normet, 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972) (“When an appeal is afforded ... it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause.”).
We find no such concern here. The right to appeal in Virginia is equally available to all persons, as it was to Krieger in this case. Further, there is no invidious discrimination in the appellate procedure. Cf. Rinaldi v. Yeager, Warden, 384 U.S. 305, 310-11, 86 S.Ct. 1497, 1500-01, 16 L.Ed.2d 577 (1966). This is true irrespective of the fact that some potential appellants may be able to afford counsel while others, such as Krieger, may not. See Aiello v. Commissioner of Public Welfare, 358 Mass. 91, 260 N.E.2d 662, 663 (1970).
Thus, nothing in the record before us suggests that Krieger has been, or may be, denied equal access to a meaningful appeal. Therefore, as Krieger would be “denied no right secured by the Federal Constitution” if no court-appointed counsel is appointed to him for purposes of obtaining appellate review, we find that Krieger is not entitled to court-appointed counsel for purposes of his appeal of the civil contempt finding and resulting sentence.
In light of this holding, we also find that Krieger is not entitled to transcripts on appeal at the expense of the Commonwealth. See M.L.B., 519 U.S. at 120-21, 117 S.Ct. at 566 (noting that the Court’s decisions concerning access to judicial processes, including access to transcripts, reflect both equal protection and due process concerns invoking a necessary case-by-case analysis of the character and intensity of the individual interest at stake, on the one hand, and the State’s justification for its exaction, on the other).

Motion denied.

. Krieger's appellate counsel represented him pro bono on appeal to address only these issues.

. Code § 17.1-606 provides as follows:
Any person, who is a resident of this Commonwealth, and on account of his poverty is unable to pay fees or costs may be allowed by a court to sue or defend a suit therein, without paying fees or costs; whereupon he shall have, from any counsel whom the court may assign him, and from all officers, all needful services and process, without any fees, except what may be included in the costs recovered from the opposite party.

. The dissent devotes a significant portion of its analysis to the idea that the Mathews balancing test is inappropriately applied in cases such as the case at bar. However, the dissent’s opinion in this regard is based upon the faulty premise that the proceeding at issue carries with it an absolute right to court-appointed counsel. See Lassiter, 452 U.S. at 26-27, 101 S.Ct. at 2159-60 ("We must balance [the Mathews ] elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.”).

. Nevertheless, we recognize that the matter at issue concerns an appeal as of right, not a discretionary appeal.

. Thus, contrary to the suggestion made by the dissent, we most certainly recognize that "the ... label of the proceeding does not dispose of the question before us.” Indeed, the very nature of the proceeding and the resulting relief must be discerned-especially in cases of contempt, where the line between civil and criminal penalties has become increasingly blurred-in order to determine the proper applicability of federal constitutional protections. See Hicks, 485 U.S. at 630-31, 108 S.Ct. at 1428-29.

. We do not address the situation of a contemnor who raises the defense of impossibility of performance with regard to the ability to purge the contempt.

. The dissent recognizes the "label” of the proceeding at issue as civil, but contends that a "civil contemnor facing the potential of incarceration has a right to appointed counsel at trial that is absolute unless waived.” This premise necessarily rejects the notion of stare decisis.
The United States Supreme Court has specifically held that "the fact that the outcome of a proceeding may result in loss of liberty does not by itself ... mean that the Sixth Amendment’s guarantee of counsel is applicable.” Middendorf v. Henry, 425 U.S. 25, 35, 96 S.Ct. 1281, 1287, 47 L.Ed.2d 556 (1976). Nevertheless, the dissent, relying chiefly upon the Court's decisions in Argersinger and Lassiter, opines that where any indigent litigant faces a potential threat of imprisonment, due process requires a per se right to appointed counsel. However, the dissent ignores relevant Supreme Court precedent.
In the recent decision of Alabama v. Shelton, - U.S. -, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) (5-4 decision), a case involving an uncounseled criminal misdemeanant, convicted and placed on a suspended sentence with probation, the Supreme Court seemingly rejected its explicit holdings in Argersinger and Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), drawing "actual imprisonment” as the line defining the constitutional right to counsel, by holding that "a suspended sentence that may end up in the actual deprivation of a person[’]s liberty may not be imposed unless the defendant was accorded the guiding hand of counsel....”- U.S. at -, 122 S.Ct. at 1767. However, the Court’s decision in this regard did not reject its longstanding general rule that “as a litigant’s interest in personal liberty diminishes, so does his right to appointed counsel.” Lassiter, 452 U.S. at 26, 101 S.Ct. at 2159.
Indeed, subsequent to Argersinger, Scott, Lassiter, and In re Gault, the Supreme Court decided Hides, a decision not addressed by the Court in Alabama v. Shelton and ignored by the dissent, which importantly holds *583 that in cases of truly civil contempt, an indigent litigant, whether actually imprisoned or not, is not entitled to the "full panoply of due process safeguards” as the dissent suggests. See Hicks, 485 U.S. at 632, 638, 108 S.Ct. at 1429, 1433. In Hicks, the Supreme Court went to great lengths to explain the distinction between criminal and civil contempt, finding that the nature of the proceeding and resulting relief must be discerned in order to determine the proper application of federal constitutional protections. The Court emphasized that "[t]he critical feature that determines whether the remedy is civil or criminal in nature is not when or whether the contemnor is physically required to set foot in jail[,] but whether the contemnor can avoid the sentence imposed [upon] him, or purge himself of it, by complying with the terms of the original order.” Id. at 635 n. 7, 108 S.Ct. at 1431 n. 7. If he can, the nature of the proceeding and the relief are civil in nature and the contemnor is not entitled to the same due process protections as a criminal defendant. Id. at 632, 638, 108 S.Ct. at 1429, 1433; see also Shillitani, 384 U.S. at 370, 86 S.Ct. at 1535 (holding "[t]he conditional nature of the imprisonment—based entirely upon the contemnor’s continued defiance—-justifies holding civil contempt proceedings absent the safeguards of indictment and jury, Uphaus v. Wyman, 364 U.S. 388, 403-404, 81 S.Ct. 153, 155, 5 L.Ed.2d 148 (1960) (Douglas, J., dissenting), provided that the usual due process requirements are met”).
Moreover, the Court in Hicks, true to its subsequent decision in Alabama v. Shelton, specifically held that in cases of contempt where a contemnor is given a determinate suspended sentence and placed on probation, the remedy would be considered criminal in nature, and not civil. Hicks, 485 U.S. at 639 n. 11, 108 S.Ct. at 1434 n. 11. The Court reasoned that:
a suspended sentence, without more, remains a determinate sentence, and a fixed term of probation is itself a punishment that is criminal in nature. A suspended sentence with a term of probation is not equivalent to a conditional sentence that would allow the contemnor to avoid or purge these sanctions. A determinate term of probation puts the contemnor under numerous disabilities that he cannot escape by complying with the dictates of the prior orders, such as ... the term of probation may be revoked and the original sentence (including incarceration) may be reimposed at any time for a variety of reasons without all the safeguards that are ordinarily afforded in criminal proceedings.

Id.

Accordingly, to accept the dissent’s rationale would be to render meaningless the careful distinctions made in the Supreme Court's opinion in Hicks. The dissent suggests that, whether an indigent litigant was sentenced to incarceration, which could be purged, or whether he was sentenced to a fixed term of incarceration, is a distinction without a difference. In both instances, the litigant would be constitutionally entitled to court-appointed counsel. This per se approach has been considered by the Court and expressly rejected as required by the Constitution. Id. See also Gagnon v. Scarpelli, 411 U.S. 778, 787, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973) ("While ... a [per se] rule has the appeal of simplicity, it would impose direct costs and *584 serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel.”). Accord State ex rel. Payne v. Empire Life Ins. Co., 351 So.2d 538 (Ala. 1977); Andrews v. Walton, 428 So.2d 663 (Fla. 1983); In re Marriage of Betts, 200 Ill.App.3d 26, 146 Ill.Dec. 441, 558 N.E.2d 404 (1990); State v. Walker, 386 So.2d 908 (La.1980); Meyer v. Meyer, 414 A.2d 236 (Me.1980); State ex rel. Shaw v. Provaznik, 708 S.W.2d 337 (Mo.Ct.App. 1986); Duval v. Duval, 114 N.H. 422, 322 A.2d 1 (1974); State ex rel. Dep’t of Human Servs. v. Rael, 97 N.M. 640, 642 P.2d 1099 (1982); Morgenthau v. Garcia, 148 Misc.2d 900, 561 N.Y.S.2d 867 (N.Y.Sup.Ct.1990); Rittel v. Rittel, 335 Pa.Super. 550, 485 A.2d 30 (1984). Thus, lacking a constitutional imperative, whether to adopt a per se rule becomes a matter of policy that should be left to the legislature.